UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KENNETH HARTLEY,

      Petitioner,

v.                                                    Case No. 3:08-cv-962-MMH-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## **ORDER**

### **I. Status**

Petitioner Kenneth Hartley, an inmate of the Florida penal system,
initiated this action with the assistance of counsel on October 7, 2008, by filing
a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1),
with a memorandum of law (Memorandum; Doc. 2). Hartley is proceeding on
an amended petition filed on January 28, 2019 (Amended Petition; Doc. 52),
with an amended memorandum of law (Amended Memorandum; Doc. 53). In
the Amended Petition, Hartley challenges a 1993 state court (Duval County,
Florida) judgment of conviction for first-degree murder, armed robbery, and
armed kidnapping. Hartley raises eight grounds for relief. <u>See</u> Amended

Petition at 23-73.[1] Respondents have submitted a memorandum in opposition to the Petition, see Response (Doc. 12), with exhibits[2] and a supplemental response to the Amended Petition, see Supplemental Response (Doc. 54). Hartley submitted a brief in reply to the Response, see Reply (Doc. 15), and to the Supplemental Response, see Supplemental Reply (Doc. 55). On November 3, 2020, Hartley filed a supplemental memorandum of law. See Supplemental Memorandum (Doc. 66). Respondents submitted a supplemental response memorandum, see Response Memorandum (Doc. 67), and Hartley submitted a reply memorandum, see Reply Memorandum (Doc. 70). This case is ripe for review.

## II. Relevant Procedural History

On July 25, 1991, the State of Florida charged Hartley by indictment with first-degree murder (count one), armed robbery (count two), and armed kidnapping (count three). Resp. Ex. I. Hartley proceeded to a jury trial, at the conclusion of which, on August 17, 1993, the jury found him guilty as charged on each count, with specific findings as to counts two and three that Hartley carried or possessed a firearm. Resp. Ex. J. The State sought the death penalty

---

[1] For purposes of reference to pleadings, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

[2] Respondents have alphabetically tabbed certain relevant portions of their exhibits, and, where appropriate, the Court will reference these tabs as "Resp. Ex. [letter]." As to the remaining records, the Court will refer to the trial records as "TR. Vol. [number] at [page number]" and the postconviction records as "PCR Vol. [number] at [page number]."

as to count one; therefore, the circuit court held a sentencing hearing. Resp. Exs. K; L; M; N; O; P. The jury voted nine to three to recommend to the circuit court that it impose the death penalty. Resp. Ex. P. The circuit court then held a sentencing hearing, Resp. Ex. Q, after which the circuit court issued a sentencing order. Resp. Ex. R. In the sentencing order, the circuit court adjudicated Hartley to be a habitual violent felony offender as to count two. Id. at 6-8. Additionally, the circuit court found that the State established six aggravating factors:  (1) Hartley was convicted of a prior felony involving the use or threat of violence; (2) Hartley committed the murder while engaged in the commission of the crime of kidnapping; (3) Hartley committed the murder for the purpose of avoiding or preventing lawful arrest; (4) Hartley committed the murder for financial gain; (5) the murder was especially heinous, atrocious, or cruel; and (6) Hartley committed the murder in a cold, calculated, and premediated manner without any pretense of moral or legal justification. Id. at 10-16. The circuit court also found two mitigating factors:  Hartley's age at the time he committed the murder and Reverend Coley Williams's testimony as to Hartley's character.[3] Id. at 17-18. However, the circuit court concluded that the aggravating circumstances, both as a whole and individually,

---

[3] The circuit court determined Reverend Williams's testimony applied to the statutory mitigating factor of "any other aspect of the defendant's character or record or any other circumstance of the offense." Resp. Ex. R at 17.

outweighed the mitigating factors. Id. at 18. The circuit court then imposed the death penalty as to count one and sentenced Hartley to a term of life imprisonment as to counts two and three, with a fifteen-year minimum mandatory as to count two and a three-year minimum mandatory as to counts two and three. Id. at 19-20. The circuit court ordered the sentence imposed for count two to run consecutively to the sentence imposed for count one, and ordered the sentence imposed for count three to run consecutively to the sentences imposed for counts one and two. Id.

On direct appeal to the Florida Supreme Court, Hartley, with the assistance of counsel, filed an initial brief, arguing that the circuit court erred when it: (1) allowed a police officer to testify that he knew Hartley had previously robbed the victim; (2) excluded the testimony of Ronald Wright; (3) denied Hartley's motion for mistrial; (4) excluded the name of the police officer to whom a confidential informant reported; (5) found that the State had a race neutral reason for excusing prospective juror Stanford; (6) instructed the jury on the cold, calculated, and premeditated aggravating factor; (7) found Hartley committed the murder in a cold, calculated, and premeditated manner; (8) impermissibly doubled two aggravating factors; (9) found that Hartley committed the murder in a heinous, atrocious, or cruel manner; (10) concluded that a jury instruction adequately informed the jury about the meaning of the aggravating factor heinous, atrocious, or cruel; and (11) excused for cause

prospective juror Goldman. Resp. Ex. T. The State filed an answer brief. Resp. Ex. U. Hartley filed a brief in reply. Resp. Ex. V. On September 19, 1996, the Florida Supreme Court affirmed Hartley's convictions and sentences with a written opinion. Hartley v. State, 686 So. 2d 1316, 1318 (Fla. 1996).

On May 1, 1997, Hartley, through counsel, sought a writ of certiorari from the United States Supreme Court, in which he raised the following issue: whether the jury instruction used in Florida since 1991 to inform a jury of the heinous, atrocious, or cruel aggravating circumstance, violated the Eighth and Fourteenth Amendments. Resp. Ex. X. The State filed a brief in opposition. Resp. Ex. Y. On October 6, 1997, the United States Supreme Court denied Hartley's petition for writ of certiorari without a written opinion, and, on that same day, his conviction became final. Resp. Ex. Z; Pugh v. Smith, 465 F.3d 1295, 1299 (11th Cir. 2006) ("If a prisoner petitions the Supreme Court for a writ of certiorari, his conviction becomes final when the Supreme Court denies the petition or affirms the conviction.").

With the assistance of counsel, on September 17, 1998, Hartley filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. AA. He raised thirty-three grounds for relief; however, while two of those grounds alleged specific facts, the remaining grounds contained generic, conclusory claims that counsel was not able to investigate and properly plead at the time of filing. Id. Of the thirty-three

claims, the following two grounds for relief contained specific factual allegations: (1) the lack of adequate funding for the Office of Capital Collateral Counsel denied Hartley's right to effective representation; and (2) state agencies' refusals to provide Hartley with public records violated his rights to due process and equal protection. Id.

Hartley filed two more "shell" motions for postconviction relief pursuant to Rules 3.850 and 3.851, which also did not raise specific factual allegations but instead generally alleged ineffective assistance of counsel and requested leave to amend. Resp. Exs. BB; CC. On February 2, 2002, Hartley filed an amended Rule 3.851 (Rule 3.851 Motion) motion raising thirty claims. PCR Vol. I at 87-176. After the State filed its response to the Rule 3.851 Motion, id. at 178, Hartley filed another amended Rule 3.851 motion substantially similar to the Rule 3.851 Motion filed on February 2, 2002. Id. at 179-268. The circuit court addressed the merits of the February 2, 2002 Motion. Id. at 1494. In his Rule 3.851 Motion,[4] Hartley asserted that: the finding of the aggravating factor of heinous, atrocious, and cruel violated the Eighth Amendment (ground two); trial counsel failed to call witnesses during the penalty phase (ground eleven); trial counsel failed to present mitigating evidence during the penalty phase (ground twenty-one); and trial counsel failed to establish available brain

---

[4] In this Order, the Court only discusses the claims relevant to the instant Petition.

damage defenses (ground twenty-two). Id. at 87-176. Hartley later filed an addendum to claims five and eleven of his Rule 3.851 Motion. Id. at 272-75.

On July 17, 2002, Hartley filed a motion to declare Florida's capital sentencing procedure unconstitutional under Ring v. Arizona.[5] Id. at 414-24. On October 20, 2003, he filed a motion for amended claim, in which he alleged he never had a psychological examination prior to the penalty phase and requested to have an evaluation completed for his postconviction proceedings. Id. at 2223-24. On November 21, 2003, Hartley filed a supplement to his Rule 3.851 Motion, in which he raised three claims alleging his counsel was ineffective when he failed to investigate an alibi defense and failed to present mitigating evidence during the penalty phase. Id. at 2227. Hartley further alleged that he was unable to obtain necessary documents from his former postconviction counsel. Id. at 2227-28. The circuit court construed all three of these filings as supplemental grounds to his Rule 3.851 Motion. Id. at 1494-95.

On June 10, 2004, the circuit denied the Rule 3.851 Motion. Id. at 1494-1521. Hartley filed a motion for rehearing. Id. at 2331-38. In response, the circuit court entered an amended order denying Hartley's Rule 3.851 Motion. Id. at 1853-81. On May 22, 2008, the Florida Supreme Court affirmed the circuit court's denial of Hartley's Rule 3.851 Motion. Hartley v. State, 990

---

[5] Ring v. Arizona, 536 U.S. 584 (2002) (holding capital defendants are entitled to a jury determination of any fact that increases their maximum punishment).

So. 2d 1008, 1010 (Fla. 2008). Hartley moved for a rehearing, which the Florida Supreme Court denied on September 10, 2008. See onlinedocketssc.flcourts.org, <u>Kenneth Hartley v. State of Florida</u>, SC04-1387 (Fla.). The Florida Supreme Court issued its mandate on September 26, 2008. <u>Id.</u>

### III. One-Year Limitations Period

The Petition was timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d). Respondents challenge the timeliness of Ground Eight of the Amended Petition; however, the Court will address that issue below.

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully

developed in the record before the Court. Because the Court can "adequately assess [Hartley's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>,

562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit Court of Appeals describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor,

529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[6] Titlow, 571 U.S. at

---

[6] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

> ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court

remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C.

§ 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly

present[]" every issue raised in his federal petition to the state's highest court,

either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346,

351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state

prisoners must give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established

appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state
> prisoner must exhaust available state remedies, 28
> U.S.C. § 2254(b)(1), thereby giving the State the
> ""'opportunity to pass upon and correct" alleged
> violations of its prisoners' federal rights.'" <u>Duncan v.
> Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d
> 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404
> U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To
> provide the State with the necessary "opportunity,"
> the prisoner must "fairly present" his claim in each
> appropriate state court (including a state supreme
> court with powers of discretionary review), thereby
> alerting that court to the federal nature of the claim.
> <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan
> v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144
> L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies

results in a procedural default which raises a potential bar to federal habeas

review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[7] supra, at 747–748, 111 S. Ct. 2546; Sykes,[8] supra, at 84–85, 97 S. Ct. 2497.  A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a

---

[7] Coleman v. Thompson, 501 U.S. 722 (1991).
[8] Wainwright v. Sykes, 433 U.S. 72 (1977).

state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[9] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This

---

[9] Murray v. Carrier, 477 U.S. 478 (1986).

> exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S.

16

Ct. 2052.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation is
> a most deferential one." <u>Richter</u>, - U.S. at -, 131 S. Ct.
> at 788. But "[e]stablishing that a state court's
> application of <u>Strickland</u> was unreasonable under §
> 2254(d) is all the more difficult. The standards created
> by <u>Strickland</u> and § 2254(d) are both highly
> deferential, and when the two apply in tandem, review
> is doubly so." <u>Id.</u> (citations and quotation marks
> omitted). "The question is not whether a federal court
> believes the state court's determination under the
> <u>Strickland</u> standard was incorrect but whether that
> determination was unreasonable - a substantially
> higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S.
> 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)
> (quotation marks omitted). If there is "any reasonable
> argument that counsel satisfied <u>Strickland</u>'s
> deferential standard," then a federal court may not
> disturb a state-court decision denying the claim.
> <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v.</u>

<u>Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the

deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds

another layer of deference – this one to a state court's decision – when we are

considering whether to grant federal habeas relief from a state court's

decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such,

"[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v.</u>

<u>Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

In Ground One, Hartley alleges that counsel was ineffective when he did not investigate or call the following penalty phase witnesses: (1) Shawn Jefferson, Hartley's brother; (2) Freddie Stevens, Hartley's high school football coach and teacher; (3) Cheryl Daniels, Hartley's sister; (4) Jean Daniels, Hartley's mother; (5) Denise Groomes, Hartley's childhood friend; (6) Tanya Hawk, Hartley's childhood friend; and (7) Dorothy Cherry, Hartley's childhood friend. Amended Petition at 23-35. According to Hartley, these individuals were available to testify during the penalty phase and would have provided mitigating evidence about Hartley's childhood and character. Id.

In his Supplemental Memorandum, Hartley argues his case is analogous to Andrus v. Texas, 140 S. Ct. 1875 (2020), in which the United States Supreme Court determined counsel performed deficiently when he failed to investigate and present mitigating evidence during Terence Andrus's penalty phase. Supplemental Memorandum at 5. Hartley contends the Court should find his counsel was deficient "in the three main areas the Supreme Court deemed important to its decision [in Andrus] . . . : (1) the failure to meaningfully investigate possible mitigation, (2) the inadvertent bolster of the State's case, and (3) the failure to critically test the State's aggravating evidence." Id. Respondents assert the facts of Andrus are distinguishable from the facts of

Hartley's case. Response Memorandum at 1. Moreover, they contend <u>Andrus</u>

does not apply to the instant case because, in <u>Andrus</u>, the Supreme Court

reviewed a state habeas decision and ultimately remanded for the state court

to determine whether counsel's performance prejudiced the defense. <u>Id.</u>

Hartley raised a similar claim in his Rule 3.851 Motion. PCR Vols. I at

116, 139-47; II at 273-74. The postconviction court denied relief. PCR Vol. XI

at 1860-62, 1866-72. The Florida Supreme Court affirmed the postconviction

court's denial, stating:

> Hartley first argues that counsel was ineffective
> for failing to present several additional witnesses at
> the penalty phase to testify about Hartley's
> background. Because Hartley fails to show either that
> the witnesses were ready, willing, and able to testify
> at trial or that counsel's failure to present them
> prejudiced Hartley, we reject this claim.

> During the penalty phase, two witnesses
> testified on Hartley's behalf. An attorney testified to
> the extensive amount of time that Hartley would serve
> in light of the habitual violent felony offender sentence
> imposed in an armed robbery case, the potential for a
> similar sentence in another armed robbery case, and
> the twenty-five-year mandatory minimum sentence on
> a life sentence for murder. Then the Reverend Coley
> Williams, who had known Hartley and his family since
> Hartley was about ten years old, testified that Hartley
> was intelligent, had a quiet and peaceful spirit,
> intermittently attended church, and came from a good
> family. Further, the minister had regularly spoken to
> Hartley while Hartley was previously imprisoned on a
> manslaughter charge and had seen or spoken to him
> several times after his release in 1991.

At the postconviction evidentiary hearing, Hartley's trial counsel testified that in order to humanize Hartley, he sought to have family members testify at the penalty phase, but none were willing. His efforts to meet with or talk with family members failed as they did not keep their appointments or did not respond to phone calls. Hartley's sister Cheryl told trial counsel that once Hartley was convicted, the family was no longer willing to support him. Regarding Hartley's brother, Shawn Jefferson (a professional football player), counsel was specifically informed that he was not available to testify because of his career demands. Regarding other witnesses presented at the postconviction hearing, trial counsel did not recall being informed of their existence.

Some of Hartley's family members also testified at the evidentiary hearing. Hartley's brother Jefferson testified to the close relationship he had with Hartley growing up-going to school, singing in the church choir, and playing sports-and that Hartley inspired and encouraged him. When Jefferson went to college, Hartley went to prison for manslaughter. Jefferson did not attend the trial because he and his family agreed that, as he had an extended family to support, he should concentrate on establishing his pro football career. Hartley's sister Cheryl Daniels served as the family's liaison with trial counsel, whom she had recommended because he once represented her. She said she was not asked to testify at trial but would have said that Hartley is a "jokeable person," a "good brother," and that he cared about the elderly. Hartley's mother testified that Hartley asked her not to attend the trial, and so she did not. She would have testified at the penalty phase that she raised Hartley and Jefferson the same way-with love and discipline and insistence on church and school attendance. When Hartley got older, however, she could no longer handle him.

21

Several other character witnesses testified. Coach Freddie Stevens, who knew Hartley for a year when Hartley was in his high school physical education class, testified that Hartley was "mannerable and cooperative." Denise Groomes said she feared attending the trial, but she would have testified that Hartley was "mannerable," had "ethical values," and attended church. Her sister Tanya Hawke testified that she had had a crush on Hartley since third grade, and he always "help[ed] out." Groomes's other sister, Dorothy Cherry, testified that she was in Atlanta during the trial and did not want to be involved, but she thought Hartley was a "great guy."

We review claims of ineffective assistance of counsel under the two-pronged standard established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, a defendant must point to specific acts or omissions of counsel that are "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. 2052. In addition, the defendant must establish prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. Claims of ineffective assistance of counsel present mixed questions of law and fact subject to plenary review. Occhicone v. State, 768 So. 2d 1037, 1045 (Fla. 2000). This Court independently reviews the trial court's legal conclusions and defers to the trial court on questions of fact and credibility.

In ruling on Hartley's claims of ineffectiveness for failing to call these witnesses, the trial court found that the witnesses presented at the evidentiary hearing were "either unwilling or unavailable to testify" at the penalty phase of trial. The court also found no prejudice under Strickland's second prong.

The court concluded that even if the witnesses had testified, "there is no reasonable probability that the balancing of aggravating and mitigating factors would have resulted in a life sentence."

We agree that Hartley has failed to meet either of Strickland's requirements. Competent, substantial evidence supports the postconviction court's conclusion that the witnesses were unwilling or unavailable to testify. The circuit court found trial counsel's testimony about his attempts to obtain witnesses, particularly family members, to be more credible than the testimony of the other witnesses. In addition, several witnesses gave contradictory statements about their availability to testify.

Even if Hartley had met the first prong, however, he has failed to demonstrate prejudice. Hartley's mother testified that she raised Jefferson and Hartley the same way, with emphasis on discipline, morals, knowing right from wrong, church, and education, but she could not control Hartley when he was older. Jefferson testified that his brother inspired and encouraged him. He also testified, however, that when he went to college Hartley went to prison for manslaughter. Jefferson stressed the responsibilities his own professional football career imposed on him and his attendant responsibility to support his extended family, which included paying for Hartley's trial counsel. Further, Jefferson went to church and actively participated in a variety of charitable activities. Had this testimony been presented in the penalty phase, the jury would have seen a stark contrast between the two brothers, who were close in age and raised together. In addition, all the other testimony from the postconviction hearing combined presents little of substance about Hartley's character. His friends, sister, and coach agreed that Hartley was "mannerable" and a "good guy" who cared about the elderly. Such generalities would add little to Reverend Williams's testimony at the penalty phase,

> which provided a more detailed and positive estimation of Hartley. In light of the five weighty aggravators in this case, the mitigation presented at the postconviction hearing fails to demonstrate prejudice.

<u>Hartley</u>, 990 So. 2d at 1012-14.

As there is a qualifying state court decision, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state supreme court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Hartley is not entitled to relief on the basis of this claim.

Nevertheless, even if the state supreme court's adjudication of the claim is not entitled to deference, Hartley's claim is without merit. After the evidentiary hearing on Hartley's Rule 3.851 Motion, the postconviction court found counsel's testimony both more credible and more persuasive than the testimony of Hartley or the proposed witnesses.[10] PCR Vol. XI at 1860-62,

---

[10] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." <u>Chandler v. United States</u>, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc); <u>see</u> <u>Franks v. GDCP Warden</u>, 975 F.3d 1165, 1176 n.1 (11th Cir. 2020); <u>Williams v. Head</u>, 185 F.3d 1223,

1866-72. Hartley has not rebutted the postconviction court's credibility determination by clear and convincing evidence, relying instead on facts that it already considered in its credibility analysis. Accordingly, the postconviction court's factual finding that the witnesses were unavailable to testify refutes Hartley's allegations in Ground One. See 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus . . . a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Even assuming counsel performed deficiently, Hartley cannot demonstrate prejudice. The failure to present cumulative evidence does not constitute ineffective assistance of counsel. Reaves v. Sec'y Fla. Dep't of Corr., 872 F.3d 1137, 1157 (11th Cir. 2017). Generally, "evidence presented in postconviction proceedings is cumulative or largely cumulative to or 'duplicative' of that presented at trial when it tells a more detailed version of the same story told at trial or provides more or better examples or amplifies the themes presented to the jury." Holsey v. Warden, Georgia Diagnostic

---

1229 (11th Cir. 1999) (noting "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney). Robert Stuart Willis was admitted to the Florida Bar in 1972. PCR Vol. XV at 2507. Therefore, at the time of Hartley's 1993 criminal trial, Willis had practiced criminal law for approximately twenty years. In 1993, Willis also received his Florida Bar Board Certification in Criminal Trial Law. Id. at 2523.

Prison, 694 F.3d 1230, 1260-61 (11th Cir. 2012) (quotation marks omitted). A petitioner cannot demonstrate prejudice where the proposed testimony of an uncalled witness would have been cumulative to other evidence or to other testimony at trial. Hall v. Thomas, 611 F.3d 1259, 1293 (11th Cir. 2010).

The record reflects that at the Rule 3.851 evidentiary hearing, Hartley called Shawn Jefferson, Freddie Stevens, Cheryl Daniels, Jean Daniels, Denise Groomes, Tanya Hawk, and Dorothy Cherry as witnesses. Jefferson stated that if counsel had called him as a witness, he would have testified that Hartley attended church and inspired Jefferson to work towards his goal of becoming a professional football player. PCR Vol. XV at 2554. He also would have described Hartley as a caring person. Id. Such testimony could have humanized Hartley for the jury; however, it could also have harmed the defense by contrasting Hartley with Jefferson, his brother. Jefferson would have testified that he and his brother grew up in a loving home and had the same opportunities. Id. at 2560-61. While Jefferson became a professional football player and financially provided for his family, Hartley was incarcerated for manslaughter and convicted of two armed robberies. Accordingly, if counsel had called Jefferson as a witness, the jury may have concluded that Hartley's background was not mitigating in nature because Hartley had the same opportunity to succeed as Jefferson, yet, unlike Jefferson, Hartley consistently engaged in criminal activity.

26

The remaining witnesses only testified generally to Hartley's attributes, without offering further details or examples. Freddie Stevens, who only interacted with Hartley during school hours for approximately a year and half, described Hartley as well-mannered and cooperative. <u>Id.</u> at 2606-10. Cheryl Daniels stated she would have testified that Hartley was a good brother, came from a loving family, had a good sense of humor, was caring, and respected the elderly. <u>Id.</u> at 2615-16. Jean Daniels, Hartley's mother, would have testified that she raised Hartley in the church. <u>Id.</u> at 2632. She described Hartley as a good boy who was kind to the elderly. <u>Id.</u> However, Jean Daniels also noted that once Hartley left her house, she did not have control over him. <u>Id.</u> at 2642. Groomes, Hawk, and Cherry would have testified that Hartley had good manners, attended church, came from a good family, and cared for them. <u>Id.</u> at 2650, 2662-63, 2682.

The Court finds that the generic nature of the testimony of the proposed witnesses is cumulative to the testimony of Reverend Coley Williams. At Hartley's penalty phase, Reverend Williams testified that he knew Hartley since 1980. TR. Vol. LXX at 2526. According to Reverend Williams, Hartley attended church sporadically, grew up in a loving family, and appeared to be mature and respectful. <u>Id.</u> at 2527, 2530-31, 2535, 2539-41. While Hartley was incarcerated for manslaughterer, Reverend Williams called and visited him on several occasions for counseling. <u>Id.</u> at 2529-31. Reverend Williams offered

substantially similar testimony to Hartley's proposed witnesses, but provided more detail. As such, Hartley's claim of ineffective assistance of counsel is without merit. See Reaves, 872 F.3d at 1157. Nevertheless, even if the proposed witnesses testified at the penalty phase, such minimal and cumulative mitigation would not have outweighed the five aggravating factors that the Florida Supreme Court determined were valid in this case (prior violent felony convictions; murder committed during the course of a kidnapping; murder committed to prevent a lawful arrest; murder committed for pecuniary gain; and the murder was cold, calculated, and premeditated).[11] Hartley, 686 So. 2d at 1324. Accordingly, Hartley is not entitled to relief.

To the extent Hartley argues the United States Supreme Court's decision in Andrus should compel the Court to find counsel performed deficiently, his argument is unavailing. In Andrus, the Supreme Court determined counsel performed deficiently, vacated the judgment of the Texas Court of Criminal Appeals denying state habeas relief to Andrus, and remanded for the court to address the prejudice prong of Strickland. Andrus, 140 S. Ct. at 1887. "[A]n 8-day evidentiary hearing in Andrus's state habeas proceeding" had revealed significant mitigating evidence that his counsel did not present to the jury:

---

[11] Prior violent felony and cold, calculated, and premeditated are among the "weightiest aggravating factors in Florida's statutory sentencing scheme." Zommer v. State, 31 So. 3d 733, 751 (Fla. 2010).

28

Andrus's mother began to sell drugs out of the family's apartment when he was six years old; Andrus's mother was absent for long periods of time because of her drug addiction; Andrus's mother engaged in prostitution to fund her addiction; Andrus acted as the caretaker for his four siblings; Andrus spent time in a juvenile detention facility, where he exhibited signs of severe mental illness; and Andrus's time in a juvenile detention facility traumatized him. Id. at 1877, 1879-81. Andrus's counsel admitted he did not investigate this mitigating evidence or the witnesses that he chose to call during the penalty phase. Id. at 1883. The Supreme Court ultimately found:

> . . . Andrus' counsel fell short of his obligation in multiple ways: First, counsel performed almost no mitigation investigation, overlooking vast tranches of mitigating evidence. Second, due to counsel's failure to investigate compelling mitigating evidence, what little evidence counsel did present backfired by bolstering the State's aggravation case. Third, counsel failed adequately to investigate the State's aggravating evidence, thereby forgoing critical opportunities to rebut the case in aggravation. Taken together, those deficiencies effected an unconstitutional abnegation of prevailing professional norms.

Id. at 1881-82.

The Court finds Andrus's case is distinguishable from Hartley's case. Here, counsel tried to obtain mitigating evidence in the form of character witnesses. However, at the Rule 3.851 evidentiary hearing, counsel testified Hartley's family members did not want to cooperate or did not want him to call

them as witnesses.[12] PCR Vol. XV at 2523, 2532 2544. While Hartley contends counsel did not investigate "the wealth of mitigation evidence stemming from Hartley's background," such as his drug use and mental health, the evidence presented at the Rule 3.851 hearing belies his assertion that any such evidence existed. None of the witnesses at the evidentiary hearing testified that Hartley suffered from a mental illness, but rather commented on his intelligence and loving upbringing. Id. at 2554, 2560-61, 2607, 2615-16, 2632, 2634, 2645, 2650, 2662-63. Moreover, as previously detailed by the Court, the witnesses that Hartley called to testify at the evidentiary hearing only had generalized character evidence and did not provide any detailed insight into Hartley's circumstances as a child.

In contrast to Andrus's counsel who did not provide any "tactical rationale for his oversights," see Andrus, 140 S. Ct. at 1883, Hartley's counsel testified that his strategy focused on the guilt phase, where he sought to make the State prove its case against Hartley, especially given the "quality" of the State's witnesses, PCR Vol. XV at 2539. Counsel pursued this strategy because,

---

[12] During the evidentiary hearing, counsel also testified that he did not want to call unwilling character witnesses because he considered it to be "a dangerous strategy." PCR Vol. XV at 2545. Notably, in Andrus, the Supreme Court determined Andrus's counsel performed deficiently because his failure to investigate led him to present evidence, specifically in the form of hostile, unprepared witnesses, that "backfired" for the defense. Andrus, 140 S. Ct. at 1881, 1883.

based on the aggravating factors, he believed Hartley had a high probability of receiving the death penalty if he proceeded to a penalty phase.[13]

Hartley's counsel also presented evidence that directly responded to the State's penalty phase evidence. The State submitted as evidence the judgments of convictions for three prior violent felonies to demonstrate Hartley's "violent," dangerous character. Resp. Exs. K at 2461-63; M at 2604-05. During the Rule 3.851 evidentiary hearing, counsel testified that he did not find any evidence to "eliminate" the aggravator of prior violent felonies. PCR Vol. XV at 2543. However, he called Alan Chipperfield, an attorney, as a witness to assure the jury that even if they chose not to sentence Hartley to death, he would remain in prison for life. Resp. Ex. J at 2455-56; PCR Vol. XVI at 2128-9. Based on the record, and for all of these reasons, the Court finds Andrus's case to be distinguishable from Hartley's case. Accordingly, the relief Hartley seeks in Ground One is due to be denied.

## B. Ground Two

Next, Hartley avers that he was denied an adequate mental health examination in violation of Ake v. Oklahoma.[14] Amended Petition at 36-40.

---

[13] In Andrus, defense counsel "conceded Andrus' guilt and informed the jury that the trial would 'boil down to the punishment phase,' emphasizing that 'that's where we are going to be fighting.'" 140 S. Ct. at 1878. The Supreme Court found that counsel's failure to investigate was "all the more alarming given that counsel's purported strategy was to concede guilt and focus on mitigation." Id. at 1883.

[14] In Ake, the United States Supreme Court determined that if a criminal defendant demonstrates that his sanity will be a significant factor at trial, the State

According to Hartley, his trial counsel never presented a mental health expert or mitigating mental health evidence during the penalty phase, even though the trial court had entered an order transporting him for the purpose of obtaining a psychiatric evaluation Id. at 36. Hartley contends his initial postconviction counsel also failed to have an expert examine him, even though Hartley raised the issue in his Rule 3.851 Motion and received an evidentiary hearing on the claim. Id. at 37-38. Hartley notes that he successfully moved the court to appoint successor postconviction counsel, in part, because of his initial counsel's failure to have an expert examine him. Id. After his appointment, successor counsel asked the Court to rule on his initial counsel's motion to appoint a psychologist to evaluate Hartley. Id. at 38. However, because the Court had already conducted an evidentiary hearing, it denied the request, determining that Hartley had waived the claim. Id. at 38-39. Hartley maintains that "[t]o date, [he] has yet to ever be evaluated by a mental health professional for evidence of mitigation." Id. at 40.

Respondents assert that "[t]his claim is technically exhausted but procedurally barred," because "Hartley did not raise this claim as a claim of error either on direct appeal or on appeal from the denial of his motion for post-

_____

must ensure the defendant has access to a competent psychiatrist who will examine him and assist in the preparation and presentation of the defense. 470 U.S. 68, 83 (1985).

conviction relief," and he cannot return to state court to raise it. Response at 22. According to Respondents, Hartley also failed to fairly present the federal nature of this claim to the Florida Supreme Court. Id. at 27-28. In his Reply, Hartley contends that he raised this claim in his initial brief appealing the postconviction court's denial of his Rule 3.851 Motion. Reply at 3. Additionally, Hartley notes that the Florida Supreme Court addressed the merits of his Ake claim and did not find it to be procedurally barred. Id. at 2-3. To the extent Respondents argue Hartley should have raised this claim during the direct appeal of his conviction and sentence, Hartley responds that this claim required factual development beyond the trial record, so he could not have raised it on direct appeal. Id. at 3.

The record reflects that Hartley raised a similar claim in his Rule 3.851 Motion, arguing counsel was ineffective for failing to obtain a mental health expert, and citing to Ake. PCR Vol. I at 148-49. The postconviction court addressed the merits of the claim in its order denying relief. PCR Vol. XI at 1872-73. In his initial brief on appeal, Hartley raised the claim that trial counsel's failure to obtain a mental health expert and to have an expert evaluate Hartley constituted ineffective assistance of counsel. Resp. Ex. JJ at 53. However, Hartley did not cite to or otherwise rely on Ake. Id. In its order affirming the postconviction court's denial of relief, the Florida Supreme Court

addressed Hartley's allegation that trial counsel failed to present a mental health expert as follows:

> Hartley also argues that trial counsel was ineffective for failing to have Hartley examined by a mental health expert and present the expert as a witness. In denying the claim, the trial court noted that the issue was set for evidentiary hearing, but no evidence was presented on it. The court is correct. The witnesses who testified at the hearing, including Hartley, his mother, his brother, and his sister, provided no evidence that Hartley had suffered any mental health or related problems, such as brain damage, low IQ, slow learning development, or abuse (sexual, physical, or neglect), or experienced problems with drugs, alcohol, or school work. Moreover, the transcript from the murder trial clearly indicates that trial counsel and Hartley discussed over a period of months whether to have Hartley examined by a mental health expert and decided not to do so. In light of Hartley's failure to present any evidence on the claim, we affirm the circuit court's conclusion that Hartley has failed to demonstrate either error or prejudice.
>
> In light of the foregoing, we affirm the trial court's order denying Hartley's claims of ineffective assistance for failure to call certain penalty phase witnesses or to present the testimony of a mental health expert.

Hartley, 990 So. 2d at 1014.

The Court is of the view that this record is sufficient to warrant a conclusion that Hartley exhausted a federal claim that trial counsel was ineffective when he failed to obtain a mental health expert and to have an expert evaluate Hartley. However, to the extent Hartley raises a due process

argument that <u>Ake</u> required the State to provide him access to a psychiatric evaluation, he did not exhaust that claim. <u>See</u> <u>Ake</u>, 40 U.S. at 83 (holding that when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that the State provide access to a psychiatrist to assist on the issue of insanity if the defendant cannot afford one). Hartley has failed to demonstrate cause or prejudice regarding his failure to properly exhaust his <u>Ake</u> claim, and he has not otherwise alleged that a fundamental miscarriage of justice will occur if the Court does not review the merits of this claim. Accordingly, Hartley's <u>Ake</u> claim is due to be denied as procedurally barred. The Court will nonetheless address the claim's merits in conjunction with its analysis of Hartley's ineffective assistance of counsel claim. <u>See</u> 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

As there is a qualifying state court decision, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state supreme court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based

on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Hartley is not entitled to relief on the basis of this claim.

Even if the state supreme court's adjudication of the claim is not entitled to deference, Hartley's claim does not have merit. The Eleventh Circuit has explained the Ake decision as follows:

> In Ake, the Supreme Court held that the Due Process Clause's guarantee of fundamental fairness requires that a state, "at a minimum, assure the [indigent] defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense" whenever an indigent defendant "demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial." Id. at 83, 105 S.Ct. at 1096. As applied to the penalty phase of a capital case, Ake requires a state to provide the capital defendant with such access to a competent psychiatrist upon a preliminary showing to the trial court that the defendant's mental status is to be a significant factor at sentencing. See Thompson v. Wainwright, 787 F.2d 1447, 1459 (11th Cir.1986), cert. denied sub nom. Thompson v. Dugger, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987); Smith v. McCormick, 914 F.2d 1153, 1160 (9th Cir.1990); see also Ake, 470 U.S. at 84, 105 S.Ct. at 1097.
>
> Having been supplied with a psychiatric expert, petitioner does not allege a denial of psychiatric assistance, but a denial of competent psychiatric assistance. Although petitioner's claim thereby differs from Ake claims previously considered by this court, we see no reason substantially to diverge from our two-step analysis of Ake claims. We first examine the information before the trial court when it is alleged to

have deprived the defendant of due process. <u>See</u>, <u>e.g.</u>, <u>Thomas v. Jones</u>, 891 F.2d 1500, 1506 (11th Cir.1989), <u>cert. denied</u>, 495 U.S. 953, 110 S.Ct. 2220, 109 L.Ed.2d 545 (1990); <u>Messer v. Kemp</u>, 831 F.2d 946, 960 (11th Cir.1987) (en banc), <u>cert. denied sub nom.</u> <u>Messer v. Zant</u>, 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 902 (1988); <u>Moore v. Kemp</u>, 809 F.2d 702, 710-13 (11th Cir.) (en banc), <u>cert. denied</u>, 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987). We then determine whether that information should have led the trial court to conclude that the defendant would probably not receive a fair trial. <u>See</u>, <u>e.g.</u>, <u>Thomas</u>, 891 F.2d at 1506; <u>Messer</u>, 831 F.2d at 960; <u>Moore</u>, 809 F.2d at 710. "Specifically, we must assess the reasonableness of the trial [court]'s action at the time [it] took it," <u>Moore</u>, 809 F.2d at 710, and "we are to evaluate the actions of the trial [court] based on the evidence presented to [it]," <u>Thomas</u>, 891 F.2d at 1506.

<u>Clisby v. Jones</u>, 960 F.2d 925, 928-30 (11th Cir. 1992).

The record reflects that after the defense completed its penalty phase case, the State requested that trial counsel put on the record why he did not present psychiatric testimony. TR. Vol. LXX at 2554-55. In response, trial counsel stated:

> Mr. Hartley and I have discussed this on several occasions over a matter of months with deliberate exercised judgment that we do not intend to do that. We did not wish to do that.
>
> Certainly we are aware that the Court entered an order transporting him for that purpose if we wanted it to be done. We did not request it to be done. I don't know that we need to do any official waiver or formal waivers in as much as counsel acknowledges those things are not required, they are not done in other situations.

Id. Counsel's representations to the trial court demonstrate that the State and trial court provided the defense with the opportunity to have psychiatric assistance with its case, but trial counsel and Hartley determined they did not want to undertake such a strategy. As such, the Court cannot find the State violated Hartley's due process rights where he and his trial counsel deliberately decided against having an expert evaluate Hartley. Accordingly, Hartley's Ake claim is without merit and is due to be denied.

To the extent Hartley asserts his trial counsel and postconviction counsel were ineffective when they failed to have an expert evaluate Hartley and to present mental health mitigation evidence, the Court finds that he cannot demonstrate prejudice because his claim is speculative. Importantly, Hartley does not even allege that he suffers from any mental illness. Amended Petition at 36-40. Further, Hartley failed to present any evidence at the evidentiary hearing on his Rule 3.851 Motion that would support a claim that mental health mitigation evidence existed. Hartley's family members and friends who testified at the hearing did not mention that Hartley suffered from any mental maladies. Some family members and friends specifically commented on his intelligence and good nature, as well as his loving upbringing. PCR Vol. XV at 2554, 2560-61, 2607, 2615-16, 2632, 2634, 2645, 2650, 2662-63. Likewise, during the penalty phase, Reverend Williams testified that nothing from his

experiences with Hartley would suggest to him that Hartley was violent. TR. Vol. LXX at 2528. Reverend Williams also stated that Hartley grew up with a loving family,  and he was not abused. Id. at 2539-40. He described Hartley as respectful and mature, as well as having average intelligence. Id. at 2540-41. Accordingly, the testimony of Hartley's family and friends fails to support a finding that an expert examination would have produced mental mitigation evidence. Hartley's speculation otherwise cannot form the basis of an ineffective assistance of counsel claim. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). As such, Hartley cannot demonstrate prejudice.

As it relates to Hartley's claim that postconviction counsel was ineffective, such a claim is not cognizable in a federal habeas petition. See 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Similarly, to the extent Hartley argues that the postconviction court erred when it failed to appoint a mental health expert, the Court finds that he does not challenge the legality of his detention, rather he challenges state postconviction proceedings. As such, the claim is not cognizable in a federal habeas corpus proceeding. See Alston v.

Dep't of Corr., Fla., 610 F.3d 1318, 1325-26 (11th Cir. 2010). In light of the foregoing analysis, Hartley's claim for relief in Ground Two is due to be denied.

## C. Ground Three

In Ground Three, Hartley alleges that the state courts violated his right to a fair trial and due process when they excluded Ronald Wright's testimony about Hank Evans' confession to murdering the victim. Amended Petition at 41-54. Hartley challenges the state courts findings concerning the credibility and trustworthiness of various witnesses and evidence that it considered in concluding that Wright's testimony was not admissible as a declaration against penal interest or pursuant to Chambers v. Mississippi, 410 U.S. 284 (1973). Id. at 43-54. In his Amended Memorandum, Hartley maintains that "[t]he state courts' [trial court and Florida Supreme Court] reliance on a mechanistic application of evidentiary rules to support its refusal to permit the defense from presenting exculpatory evidence while allowing the prosecution to present evidence lacking in credibility to gain a conviction violates clearly established federal law." Amended Memorandum at 58.

In the months leading up to the trial, on May 14, 1993, the State filed a motion in limine to exclude Ronald Wright's testimony and Evans' letter to Wright. TR. Vol. I at 101. The trial court held multiple hearings on the motion and received testimony from Hank Evans. TR. Vols. LVI at 1307-26; LVIII at 1368-1409; LXIII at 1424-56. On August 13, 1993, the trial court granted the

motion in limine, TR. Vols. II at 348; LXIV at 1459-62, and issued a written

order detailing its rationale on August 23, 1993. TR. Vol. II at 363-69. Hartley

contended in his initial brief on direct appeal that the trial court erred when it

excluded Wright's testimony. Resp. Ex. T at 28-34. The Florida Supreme Court

affirmed the trial court's ruling for the following reasons:

> Hartley contends that the trial judge improperly excluded the testimony of Ronald Wright regarding a letter Wright received from Hank Evans, in which Evans purportedly confessed to murdering the victim. In the letter, Evans stated: "You was my home-boy and I never told you a thing about that Sherwood Blazer tip until we got to Lake Butler and shit had cleared up." The State moved to exclude this evidence and the trial judge granted the State's motion after finding the testimony to be inadmissible hearsay. Hartley acknowledges that the testimony constitutes inadmissible hearsay, but contends that the testimony should have been introduced under Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)(on rare occasions the strict requirements of the evidence code should be set aside in the interests of justice). We disagree.

> The trial judge rejected the Chambers argument after finding that Wright's testimony was unreliable and untrustworthy and that no evidence corroborated Evans's alleged confession. The testimony at the pretrial hearing on this issue revealed that Wright submitted the letter but refused to testify until his own cases were resolved. When Wright eventually did testify, he stated that Evans told him the following facts about the murder: that Evans shot the victim outside a convenience store; that Evans was standing outside the car when he shot the victim, who was in the driver's seat; and that Evans moved the victim to the passenger's seat and drove the vehicle to the field

> where he left it. Wright also stated that he knew
> Evans was listed as a witness against him. Evans, on
> the other hand, testified that he discussed rumors he
> had heard about this case with Wright but that he
> never confessed to him. Additionally, Evans testified
> that his letter to Wright was in response to a letter he
> had received from Wright asking him not to testify
> against him. The trial judge also considered testimony
> from a number of others, including two individuals
> who overheard Wright state that he was going to lie
> for Hartley by stating that someone else had confessed
> to killing the victim. Based on this evidence, we find
> that the trial judge properly found the evidence to be
> unreliable and inadmissible under Chambers.

Hartley, 686 So. 2d at 1320-21.

As there is a qualifying state court decision, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state supreme court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Hartley is not entitled to relief on the basis of this claim.

Nevertheless, even if the state supreme court's adjudication of this claim is not entitled to deference, the claim in Ground Three is without merit. In Chambers, the Supreme Court explained:

42

Few rights are more fundamental than that of an accused to present witnesses in his own defense. <u>E.g.</u>, <u>Webb v. Texas</u>, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); <u>Washington v. Texas</u>, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); <u>In re Oliver</u>, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed. The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest. That testimony also was critical to Chambers' defense. In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.

<u>Chambers</u>, 410 U.S. at 302. The Eleventh Circuit has held Florida's evidentiary rule regarding the admissibility of statements against penal interest complies with <u>Chambers</u>:

Like many jurisdictions, Florida recognize[s] an exception for statements made against penal interest. Under the rule, "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is inadmissible, unless corroborating circumstances show the trustworthiness of the statement." Fla. Stat. § 90.804(2)(c) (1989). The Florida rule thus largely tracks <u>Chambers</u>'s holding. <u>See</u> <u>Chambers</u>, 410 U.S. at 302, 93 S.Ct. 1038 (holding that the hearsay rule cannot be applied to exclude

critical defense evidence that bears "persuasive assurances of trustworthiness").

The bar on hearsay remains firmly grounded in the state's legitimate interest in excluding unreliable and untrustworthy testimony from a jury's consideration.

> The hearsay rule, which has long been recognized and respected by virtually every State, is based on experience and grounded in the notion that untrustworthy evidence should not be presented to the triers of fact. Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury.

Chambers, 410 U.S. at 298, 93 S.Ct. 1038.

Since hearsay prohibitions are not arbitrary, [petitioner] would only be entitled to a constitutional override of Florida's rules if [petitioner] had offered evidence that the [declarant's] hearsay statement was sufficiently trustworthy and reliable. . . .

Pittman v. Sec'y, Fla. Dep't of Corr., 871 F.3d 1231, 1248 (11th Cir. 2017).

Accordingly, to establish that Wright's testimony was improperly excluded, Hartley must show that Wright's hearsay testimony was sufficiently trustworthy and reliable in order to receive relief under Chambers. Id.

The defense sought to introduce Wright's testimony that Evans confessed to him that Evans murdered the victim. TR. Vol. LVI at 1315-18. In support of Wright's allegation, the defense obtained a letter from Evans to Wright in which Evans stated: "I've made money with you, you was my home boy and I never told you a thing about that Blazer Sherwood tip until we got to Butler and the [expletive] had done cleared up." Id. at 1316. During a hearing on the State's motion in limine, the State called Evans to testify. TR. Vol. LVII at 1369-1407. Evans testified that he and Wright were friends, and they committed a robbery together in 1991. Id. at 1370-71. Upon his arrest for the robbery, Evans confessed to his role in the incident and told police that Wright helped him commit the robbery. Id. at 1371-74. Police arrested Wright based on Evans' tip. Id. at 1373. While in the Duval County jail, Evans heard rumors about Hartley's case, specifically that Hartley and Johnson murdered the victim, Gino Mayhew. Id. at 1375-76. Eventually, both Wright and Evans pled guilty to the robbery, and, at one point, they were both inmates at the same correctional facility. Id. at 1374. During that time, Evans and Wright discussed Mayhew's murder and the rumors that Evans heard about the case. Id. at 1376. Evans, however, denied telling Wright that he killed Mayhew. Id. at 1376-77. Evans and Wright were both transferred to different facilities after approximately a week. Id. at 1377.

45

Police later brought Evans to the Duval County jail to question him concerning another robbery that they suspected Wright had committed. Evans gave a sworn statement that he overheard a conversation between Wright and another individual during which they discussed robbing a pizza place and shooting someone. Id. at 1378-79. Evans agreed to be a State witness in Wright's case and was deposed on July 20, 1992. Id. at 1379-80. After arriving at the Duval County jail, Evans received a letter from Wright in which Wright requested that Evans not testify against him. Id. at 1380-81. In response to Wright's letter, Evans wrote to Wright stating generally that he would not testify against Wright and that Wright should not trust people in prison or discuss his case. Id. at 1383-85.

At the hearing on the State's motion in limine, Evans testified to the contents of his letter and the meaning of each sentence. Id. at 1383-89. Regarding the portion of the letter referencing the Mayhew murder, Evans stated:

> What I meant, I was using this Sherwood Blazer tip as an example. When I was in the county jail, like during the time from May 25th, from November 1st, the rumors that I heard, I never went to the authorities trying to get a less, you know, a lenient sentence, you know, on my behalf, you know, going to the authorities with this information, trying to help myself.
> . . . .

> What I meant by that was just that I was already
> sentenced. You know, I waited until I got sentenced
> before I told anybody.

Id. at 1387. When asked if there was any reason why Wright might hold a

grudge against Evans, Evans noted that he told police about Wright's role in

the robbery, without which the police likely would not have arrested Wright.

Id. at 1389-91. Further, Evans was willing to testify against Wright in another

case. Id. In support of its motion in limine, the State also submitted statements

from three inmates who overheard Hartley and Wright discuss their plan to

implicate Evans for Mayhew's murder. TR. Vol. LXIII at 1436. In light of this

testimony and evidence, the trial court concluded Wright's hearsay testimony

lacked corroboration, was unreliable, and was not trustworthy; therefore, the

defense could not introduce it pursuant to Chambers. TR. Vol. II at 367-68.

Upon review of the evidence, the Court finds that Wright's testimony was

not sufficiently trustworthy or reliable. Evans' testimony contradicts Wright's

allegations. Additionally, a plain reading of the letter supports Evans'

testimony that he mentioned Mayhew's murder in the letter as a reason why

Wright should not trust anyone in prison. TR. Vol. LVIII at 1407-09. Moreover,

three inmates provided statements that they overheard Wright and Hartley

discussing a plan where Wright would provide false testimony to help Hartley.

TR. Supp. Vol. I at 163, 223, 247. Based on the lack of corroboration for

Wright's testimony and the significant evidence indicating Wright provided

false testimony, the Court finds that the state courts did not err when they excluded Wright's testimony. As such, the relief Hartley seeks in Ground Three is due to be denied.

### D. Ground Four

Next, Hartley alleges that the Florida Supreme Court erred when it concluded that the introduction of a police officer's testimony about a prior robbery committed by Hartley was harmless error. Amended Petition at 55-56. The trial court allowed Quinn Baxter, the officer who interrogated Hartley, to testify that when Hartley denied knowing Mayhew, Baxter knew Hartley was lying because Hartley had robbed Mayhew two days before the murder. Id. On direct appeal, the Florida Supreme Court ruled that the introduction of Baxter's testimony was improper, but also concluded that it constituted harmless error. Id. at 56.

Respondents contend that this claim is procedurally barred because although Hartley raised a similar claim on direct appeal, he argued it only pursuant to state law, and he cannot now return to state court to raise the claim. Response at 24, 28. In his Reply, Hartley maintains that he did present the federal nature of this claim to the Florida Supreme Court because he cited to a constitutional amendment in the heading of the claim in his initial brief. Reply at 4.

The Eleventh Circuit has explained the exhaustion requirement of federal habeas claims as follows:

> Habeas petitioners generally cannot raise claims in federal court if those claims were not first exhausted in state court. 28 U.S.C. § 2254(b)(1); Kelley v. Sec'y for Dept. of Corr., 377 F.3d at 1343.[15] In order to be exhausted, a federal claim must be fairly presented to the state courts. Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). "It is not sufficient merely that the federal habeas petitioner has been through the state courts ... nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." Kelley, 377 F.3d at 1343-44 (citing Picard, 404 U.S. at 275-76, 92 S.Ct. at 512 and Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982)). Rather, in order to ensure that state courts have the first opportunity to hear all claims, federal courts "have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." Picard, 404 U.S. at 275, 92 S.Ct. at 512 (citations omitted). While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court "such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation." Kelley, 377 F.3d at 1344-45 (citing Picard, 404 U.S. at 277, 92 S.Ct. at 513).

> While these broad principles are relatively clear, the district court correctly noted that many courts have struggled to pinpoint the minimum requirements that a habeas petitioner must meet in order to exhaust his remedies. For instance, the Supreme Court recently wrote that a petitioner wishing to raise a federal issue in state court can do so "by citing in

---

[15] Kelley v. Sec'y for Dept. of Corr., 377 F.3d 1317 (11th Cir. 2004).

conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.' " Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004). If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement [:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.' " McNair, 315 F.Supp.2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S.Ct. 617, 620, 88 L.Ed.2d 598 (1986)).[16] This is consistent with settled law established by the Supreme Court. See Picard, 404 U.S. at 275, 92 S.Ct. at 512 ("We emphasize that the federal claim must be fairly presented to the state courts."). We therefore hold that " '[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.' " Kelley, 377 F.3d at 1345 (quoting Martens v. Shannon, 836 F.2d 715, 717 (1st Cir.1988)).

McNair v. Campbell, 416 F.3d 1291, 1302-03 (11th Cir. 2005).

In Hartley's initial brief on direct appeal, he raised a substantially similar claim as that stated in Ground Four. Resp. Ex. T at 15-27. The heading of this claim in his initial brief states that the admission of Baxter's statement violated his Fourteenth Amendment right to a fair trial. Id. at 15. In the body of the claim, Hartley argued that Baxter's statement did not qualify as

---

[16] McNair v. Campbell, 315 F. Supp. 2d 1179 (M.D. Ala. 2004).

<u>Williams</u>[17] Rule evidence, and, in the alternative, if it constituted <u>Williams</u>

Rule evidence, it was irrelevant, overly prejudicial, and not sufficiently similar

to the charged crime. <u>Id.</u> at 16-27. Other than the heading of the claim, Hartley

did not cite to the United States Constitution or rely on federal case law in

arguing this claim to the Florida Supreme Court; instead, he relied solely on

cases applying Florida law. <u>Id.</u> As such, the Court finds Hartley did not afford

the Florida Supreme Court a meaningful opportunity to consider the federal

nature of this claim. His single reference to the Fourteenth Amendment in the

heading of the claim is insufficient to establish that it was fairly presented to

the Florida Supreme Court. <u>See</u> <u>McNair</u>, 416 F.3d at 1302-03. Accordingly, the

claim in Ground Four is due to be denied as procedurally barred. Hartley has

not shown either cause excusing the default or actual prejudice resulting from

the bar. Moreover, he has failed to identify any fact warranting the application

of the fundamental miscarriage of justice exception.

Nonetheless, even if Hartley's claim was not procedurally barred, he still

is not entitled to federal habeas relief. On direct appeal, the Florida Supreme

Court held, in pertinent part:

> Hartley contends that the State was improperly
> allowed to introduce the testimony of a police officer at
> trial regarding Hartley's arrest. The police officer

---

[17] <u>Williams v. State</u>, 110 So. 2d 654 (Fla. 1959) (holding that similar crime evidence is admissible if relevant except when it is offered solely to prove bad character or propensity).

testified that when he arrested Hartley and Ferrell for the victim's murder, Hartley denied knowing the victim. The police officer then testified that he told Hartley they knew he had robbed the victim two days before the murder. The trial judge allowed this testimony, over defense counsel's objection, as relevant Williams[] rule evidence under section 90.404(2)(a), Florida Statutes (1995) (similar fact evidence). According to Hartley, this testimony constituted inadmissible and irrelevant prejudicial evidence regarding a dissimilar prior crime, which was introduced simply to prove propensity and bad character.

Section 90.404(2)(a), provides as follows:

Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.

Under this statute, evidence of other crimes is admissible only if it is "similar fact evidence." Griffin v. State, 639 So. 2d 966 (Fla.1994), cert. denied, 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995); Drake v. State, 400 So. 2d 1217 (Fla. 1981). Clearly, under the circumstances set forth in this record, evidence that Hartley had robbed the victim in this case two days before the murder was not similar fact evidence, and, thus, was inadmissible under section 90.404(2)(a). This does not mean, however, that evidence of other crimes is never admissible unless it is similar. Rather, evidence of other crimes that are "inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged," is admissible under section 90.402

(admissibility of relevant evidence) because it is relevant and necessary to adequately describe the crime at issue. Griffin, 639 So. 2d at 968; Bryan v. State, 533 So. 2d 744 (Fla. 1988), cert. denied, 490 U.S. 1028, 109 S.Ct. 1765, 104 L.Ed.2d 200 (1989).

Applying this standard, we find that the testimony of the officer should not have been admitted. The officer was not testifying to the fact that Hartley admitted robbing the victim; the officer was merely repeating the officer's own statement that he knew Hartley robbed the victim two days before the murder. Under the circumstances of this case, however, we do not find that this error warrants reversal of Hartley's conviction. In Hartley's own admissions to other witnesses, he stated that "the only reason they [are] saying that [I killed the victim] is because I robbed him two days before he was killed." This testimony was properly introduced through two other witnesses as after-the-fact evidence of a desire to evade prosecution, which is relevant to the consciousness of guilt. Anderson v. State, 574 So. 2d 87 (Fla.), cert. denied, 502 U.S. 834, 112 S.Ct. 114, 116 L.Ed.2d 83 (1991). Moreover, Hartley's own counsel made reference to this robbery during opening statements when he told the jury:

> And I might add there are a couple of other informants that appeared along this same line that couldn't—didn't mention in fact an informant showed up, the police went out, thought it might be a suspect in this case turned around and talked about yet a second robbery accusing Kenneth Hartley of being involved, same guy, [the victim], two nights ago, two nights before this. Maybe we'll hear about it, maybe we won't, maybe counsel is not going to put that evidence on.

53

> In sum, because defense counsel himself told the jury about the robbery and because other witnesses properly testified about Hartley's own statements regarding the robbery, we do not find the admission of the police officer's statement constituted harmful error.

Hartley, 686 So. 2d at 1319-20 (footnote omitted). As there is a qualifying state court decision, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state supreme court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Hartley is not entitled to relief on the basis of this claim.

Even assuming the Florida Supreme Court's adjudication of the claim is not entitled to deference, Hartley's claim does not have merit. The introduction of Baxter's testimony was harmless error because the evidence was properly admitted through the testimony of other witnesses at trial. Ronald Bronner testified that he talked with Hartley at a local carwash about the rumors that Hartley killed Mayhew. TR. Vol. LXVIII at 2223-24. Hartley told Bronner that people were spreading those rumors because Hartley robbed Mayhew two days before his murder. Id. at 2224. Likewise, Eric Brooks testified that while he

was incarcerated in the same section of the jail as Hartley, Hartley denied murdering the victim but admitted to robbing him. Id. at 2260. Bronner and Brooks's testimony was admissible under Florida law to establish consciousness of guilt through Hartley's attempt to conceal his role in the murder. See Straight v. State, 397 So. 2d 903, 908 (Fla. 1981) ("When a suspected person in any manner attempts to escape or evade a threatened prosecution by flight, concealment, resistance to lawful arrest, or other indications after the fact of a desire to evade prosecution, such fact is admissible, being relevant to the consciousness of guilt which may be inferred from such circumstance."). Accordingly, as evidence of the robbery was properly admitted through other witnesses, the Florida Supreme Court did not err when it determined the introduction of Baxter's testimony was harmless error. In light of the above analysis, the relief Hartley seeks in his claim raised in Ground Four is due to be denied.

## E. Ground Five

In Ground Five, Hartley contends that the State's discriminatory use of a peremptory challenge to strike a prospective African American juror, Theresa Stanford, violated his right to an impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. Amended Petition at 57-64. During jury selection, the State used a peremptory challenge on Stanford, which caused counsel to object and request a race-neutral reason for

the challenge. Id. at 57. The prosecutor responded that he challenged Stanford because she opposed the death penalty, and she could be too forgiving as a psychotherapist. Id. at 58. The trial court found these two reasons to be adequate race-neutral reasons for striking Stanford. Id. In his Amended Petition, Hartley argues that Stanford's answers during voir dire do not support these reasons. Id. at 58-64. Hartley contends that Stanford stated she was not opposed to the death penalty in all cases. Id. at 60. According to Hartley, she stated that she could set aside her opinion and objectively consider the evidence. Id. at 59. Hartley further contends that the State never questioned certain prospective Caucasian jurors to determine under what circumstances they would support or oppose the death penalty. Id. at 63-64.

Respondents aver that this claim is procedurally barred because although Hartley raised a similar issue on appeal, he did not raise it as a claim of federal constitutional error. Response at 25, 29. In his Reply, Hartley asserts that he did present the federal nature of this claim to the Florida Supreme Court because he included a reference to the Sixth and Fourteenth Amendments to the United States Constitution in the heading of the claim in his initial brief. Reply at 3-5. Additionally, Hartley contends that he cited to Florida Supreme Court cases that cite to and discuss a United States Supreme Court case. Id. at 4.

In Hartley's initial brief on direct appeal, he raised a substantially similar claim. Resp. Ex. T at 44-48. However, as with the claim in Ground Four, besides the heading of the claim, Hartley did not cite to the United States Constitution or rely on federal case law when arguing this claim to the Florida Supreme Court; instead, he relied solely on Florida case law that interpreted the Florida Constitution. Id. As such, the Court finds Hartley did not afford the Florida Supreme Court a meaningful opportunity to consider the federal nature of this claim. Hartley's sole reference to the Sixth and Fourteenth Amendments in the heading of his claim is insufficient to establish that the claim in Ground Five was fairly presented to the Florida Supreme Court. See McNair, 416 F.3d at 1302-03. Accordingly, the claim in Ground Five is due to be denied as procedurally barred. Hartley has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Nevertheless, even if the claim was not procedurally barred, Hartley is not entitled to federal habeas relief. On direct appeal, the Florida Supreme Court rejected Hartley's claim with the following discussion:

> Hartley claims that the trial judge erred in finding that the State had a race-neutral reason for excusing a prospective juror. One of the prospective jurors in this case was an African-American who worked for a social services agency and had a master's degree in

psychology. When asked about her views on the death penalty, she stated that she was against it because she thought people could be rehabilitated in some other form. She later stated that she would have to see the evidence before determining whether the death penalty would be appropriate. The State peremptorily challenged the prospective juror. When challenged, the State responded that her negative feelings about the death penalty and her line of work raised concerns about her ability to impose the death penalty. The judge found these reasons to be racially neutral. Hartley contends that these reasons were insufficient to establish a race-neutral basis for challenging the juror. According to Hartley, this Court rejected a similar argument in State v. Slappy, 522 So. 2d 18 (Fla.)(simple assumption that a teacher was "liberal" was an insufficient reason, without record support, to justify the peremptory challenge), cert. denied. 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988).

This Court has repeatedly held that a prospective juror's view against the death penalty is a legitimate, race-neutral reason for a peremptory challenge. Walls v. State, 641 So. 2d 381 (Fla. 1994), cert. denied, 513 U.S. 1130, 115 S.Ct. 943, 130 L.Ed.2d 887 (1995); Atwater v. State, 626 So. 2d 1325 (Fla. 1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994). Here, the juror specifically stated that she was against the death penalty. That reason was sufficient to provide a race-neutral reason for the peremptory challenge.

Hartley, 686 So. 2d at 1322. As there is a qualifying state court decision, the

Court will address this claim in accordance with the deferential standard for

federal court review of state court adjudications. After a review of the record

and the applicable law, the Court concludes that the state supreme court's

adjudication of this claim was not contrary to clearly established federal law,

did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Hartley is not entitled to relief on the basis of this claim.

Even assuming the Florida Supreme Court's adjudication of the claim is not entitled to deference, Hartley's claim does not have merit. In <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), the United States Supreme Court held that the Equal Protection Clause forbids the government from challenging potential jurors solely based on their race or on the assumption that African American jurors would be unable to impartially consider the evidence against an African American defendant. In <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003), the United States Supreme Court detailed <u>Batson</u>'s three-step analysis:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

<u>Id.</u> at 328-29 (citations omitted).

The record reflects Stanford was a psychotherapist and the program director for Lutheran Social Services, a public mental health center. TR. Vol. LXV at 1504-05. When questioned about her beliefs regarding the death

penalty, Stanford stated, "I'm against it, I think a person can be rehabilitated in some other form." Id. at 1543. Stanford also commented that she could objectively look at the facts and set aside personal judgment, but she would need to hear the evidence before she could make a decision. She stated that her opinion about the death penalty was not a strongly held belief. Id. at 1662-63. Notably, Stanford equivocated when asked if there were instances where she could recommend a death sentence. TR. Vol. LXVI at 1666-67. Eventually, the State sought to use one of its peremptory challenges on Stanford. TR. Vol. LXVII at 1887. The defense then asked for a race-neutral reason. Id. The prosecutor responded:

> Your Honor, I challenged Miss Stanford because she stated that she was personally opposed to the death penalty but she felt she would be able to set aside her personal feeling and follow the law. My concern is that her feelings opposed to the death penalty are adverse to the State's position in this case, also I am concerned about her field of work -- that's my primary reason but I'm also concerned with psyco therapist [sic], I'm concerned she's too forgiving because of her line of work and understanding human frailties.

Id. The trial court found these two reasons to be race-neutral reasons for striking Stanford, and it also noted that the State had not challenged four prospective African Americans jurors of the initial twelve prospective jurors. Id. at 1888.

In federal habeas proceedings § 2254(e)(1) instructs that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Here, Hartley has failed to rebut the trial court's factual finding that the State offered sufficient race-neutral reasons to strike Stanford. As such, the Court is bound by the trial court's determination on this issue. See id; Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (presuming as correct the "trial court's prior determination of fact that the State's race-neutral explanations were true" until the petitioner rebutted the presumption by clear and convincing evidence).

Additionally, the Court finds that the State offered a clear and reasonably specific explanation for exercising the peremptory challenge against Stanford. Although Stanford stated she could be objective, she also stated that she was against the death penalty and was unable to say with certainty whether or not she could vote to impose the death penalty in a particular case. Therefore, based on Stanford's answers during voir dire, the State had a rational basis for the determination that her view on the death penalty, regardless of her race, would undermine its position in the case. See Bowles v. Sec'y for Dept. of Corr., 608 F.3d 1313, 1317 (11th Cir. 2010) ("Because clearly established federal law, as determined by holdings in

Supreme Court decisions, does not prohibit prosecutors from using their peremptory strikes to remove venire members who are not ardent supporters of the death penalty, the district court correctly denied Bowles relief on this claim."). Hartley has failed to establish the State violated <u>Batson</u>. Accordingly, relief on his claim in Ground Five is due to be denied.

### F. Ground Six

As Ground Six, Hartley contends the Florida Supreme Court violated his right to due process under the Fourteenth Amendment when it failed to reweigh the aggravating and mitigating factors on direct appeal. Amended Petition at 65. According to Hartley, the Florida Supreme Court found that the trial court's jury instruction on the cold, calculated, and premediated aggravating factor was unconstitutional, but that it could not review the issue because the defense's objection to the instruction was not properly preserved. <u>Id.</u> The Florida Supreme Court also struck the trial court's finding with respect to the heinous, atrocious, and cruel aggravating factor. <u>Id.</u> Hartley argues, in light of its finding on these two aggravators, the Florida Supreme Court should have reweighed the aggravating and mitigating factors. <u>Id.</u> Further, according to Hartley, "[t]he state court's harmless error analysis is contrary to federal law and is refuted by clear and convincing evidence." Amended Memorandum at 77. Hartley avers that the Florida Supreme Court was required to give "'a detailed explanation based on the record' justifying the state court's upholding

Mr. Hartley's death sentence." Id. at 78. Hartley asserts that "[t]he state court's harmless error analysis fail[ed] to consider the effect of the unconstitutional CCP [cold, calculated, and premeditated] jury instruction and the striking of the HAC [heinous, atrocious, and cruel] aggravator in light of penalty phase counsel's ineffective representation, the failure to consult a mental health expert and that three out of the twelve juror's voted for a life recommendation." Id. at 78-79.

Respondents aver that a portion of the claim in Ground Six is procedurally defaulted. Response at 29. Specifically, they contend that "[b]ecause the Florida Supreme Court found Hartley's constitutional attack on the CCP instruction procedurally barred under state law, this portion of Hartley's claim should not be reviewed in federal court." Id. "Instead, this Court should review only that portion of Hartley's claim that alleges the Florida Supreme Court erred in declining to reweigh the aggravators and mitigators when it struck the HAC aggravator." Id. Hartley did not respond to this contention in his Reply. See Reply at 2-5, 29-30.

The Court finds that to the extent Hartley argues that the Florida Supreme Court should have considered the unconstitutionality of the cold, calculated, and premediated jury instruction in weighing the aggravating and mitigating factors, this claim is procedurally defaulted because the Florida Supreme Court determined Hartley failed to properly preserve that issue for

appeal. See Martinez, 132 S. Ct. at 1316. The Florida Supreme Court relied on a state procedural rule which constitutes a nonfederal ground adequate to support the judgment, and the rule is firmly established and consistently followed. See Crump v. State, 654 So. 2d 545, 548 (Fla. 1995). Nonetheless, the Court will address the merits of Hartley's claim as a whole. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State).

Regarding the cold, calculated, and premediated aggravator, the Florida Supreme Court ruled as follows:

> Next, Hartley argues that the trial judge erroneously instructed the jury regarding the aggravating factor of CCP. The jury instruction provided in this case on CCP was found to be unconstitutional in Jackson v. State, 648 So. 2d 85 (Fla. 1994). We conclude, however, that this issue is procedurally barred because Hartley merely objected to the constitutionality of the CCP aggravator generally. He did not object to the form of the instruction given, nor did he submit a limiting instruction. Crump v. State, 654 So. 2d 545 (Fla. 1995) (objection at trial must attack the instruction itself, either by submission of a limiting instruction or by an objection to the instruction as worded). In this case, as in Crump, Hartley's objection to the CCP instruction concerned the constitutionality of the aggravating factor itself and whether CCP applied to his case.

> In a related claim, Hartley contends that the trial judge erroneously found this murder to be CCP. In his sentencing order, the trial judge stated that

Hartley "planned to kidnap, rob, and murder [the victim] so he could not retaliate for [the] earlier robbery." As Hartley correctly points out, no record support exists for this conclusion. Although testimony in this case revealed that an earlier robbery did occur, there was no specific testimony to support a finding that the murder in this case was to prevent retaliation for the earlier robbery. This record reflects that the original plan was to rob some "dreads," but that the defendants then decided to "get [the victim]." Apparently, in his sentencing order, the trial judge confused the facts presented in this case with the facts presented in codefendant Ferrell's case in which testimony was presented to show that the victim was executed to prevent retaliation. See Ferrell v. State, 686 So. 2d 1324 (Fla. 1996). Consequently, we conclude that the trial judge erred in relying on these facts, as stated in the sentencing order, in finding this murder to be CCP. Nevertheless, we find this error to be harmless beyond a reasonable doubt given that we find other record evidence to support the conclusion that this murder was CCP. Hartley obtained a gun and a getaway vehicle in advance; he did not act out of frenzy, panic, or rage; he forced the victim to drive to a remote area where there would be no witnesses; he shot the victim five times execution-style; and he told a witness that he and the other defendants decided to "get [the victim]." Consequently, we reject the claim that this murder was not CCP.

Hartley, 686 So. 2d at 1323. As it relates to the heinous, atrocious, and cruel

aggravator, the Florida Supreme Court made the following findings:

Hartley's final two claims concern the aggravating factor of HAC. Hartley claims that the judge provided an unconstitutional HAC instruction to the jury and erroneously found the murder to be HAC. We reject the claim that the instruction was erroneous. The instruction provided was approved by this Court in Hall v. State, 614 So. 2d 473 (Fla.) [sic],

cert. denied, 510 U.S. 834, 114 S.Ct. 109, 126 L.Ed.2d 74 (1993). We agree, however, that the trial judge improperly found the murder to be HAC. In order for the HAC aggravating circumstance to apply, the murder must be conscienceless or pitiless and unnecessarily torturous to the victim. Richardson v. State, 604 So. 2d 1107 (Fla. 1992). Execution-style killings are not generally HAC unless the state has presented other evidence to show some physical or mental torture of the victim. In this case the medical examiner could not determine the order in which the shots had been fired and there is no evidence that Hartley deliberately shot the victim to cause him unnecessary suffering. In fact, the evidence reflects that the murder was carried out quickly. Speculation that the victim may have realized that the defendants intended more than a robbery when forcing the victim to drive to the field is insufficient to support this aggravating factor. Nevertheless, we find this error to be harmless beyond a reasonable doubt in light of the five remaining valid aggravating factors (CCP; prior violent felony convictions; committed during the course of a kidnapping; committed to prevent a lawful arrest; and committed for pecuniary gain) and minimal mitigation.

Id. at 1323-24 (emphasis added).

As there is a qualifying state court decision, the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state supreme court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings. Thus, Hartley is not entitled to relief on the basis of this claim.

Nevertheless, even if the Florida Supreme Court's adjudication of this claim is not entitled to deference, the claim is meritless. "Where the death sentence has been infected by a vague or otherwise constitutionally invalid aggravating factor, the state appellate court or some other state sentencer must actually perform a new sentencing calculus, if the sentence is to stand." Richmond v. Lewis, 506 U.S. 40, 49 (1992). The new sentencing calculus can be accomplished either by conducting a harmless error analysis or by reweighing the remaining valid aggravating factors against the available mitigating factors. Parker v. Dugger, 498 U.S. 308, 318-319 (1991). Should a state appellate court undertake a harmless error analysis, "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24 (1967). Where an appellate court strikes an aggravating factor as invalid or unconstitutional and the government relied heavily on that invalid or unconstitutional factor in arguing for the imposition of death, a state appellate court is required to give a detailed explanation based on the record as to why the error was harmless. Clemons v. Mississippi, 494 U.S. 738, 753-54 (1990).

Here, the record reflects that the Florida Supreme Court conducted a harmless error analysis in accordance with the Chapman standard. Hartley,

686 So. 2d at 1323-24. Nevertheless, Hartley contends that the Florida Supreme Court failed to consider (1) the unconstitutional cold, calculated, and premediated jury instruction; (2) the striking of the heinous, atrocious, and cruel aggravating factor; (3) penalty phase counsel's ineffective assistance; (4) the failure of penalty phase counsel to consult a mental health expert; and (5) the fact that three out of the twelve voters recommended a life sentence. Amended Memorandum at 78-79. As to the first consideration, although the Florida Supreme Court acknowledged the trial court gave an erroneous instruction for the cold, calculated, and premediated aggravator, it specifically found Hartley failed to preserve that issue. Hartley, 686 So. 2d at 1322-23. As such, the Florida Supreme Court could not consider that erroneous instruction in its harmless error analysis. See Crump, 654 So. 2d at 548. Accordingly, the Florida Supreme Court did not err when it failed to consider the unconstitutionality of the cold, calculated, and premediated jury instruction.

As to the second consideration, the Florida Supreme Court's opinion refutes Hartley's contention that it did not consider the striking of that factor in its harmless error analysis. The Florida Supreme Court specifically stated:

> Nevertheless, we find this error to be harmless beyond a reasonable doubt in light of the five remaining valid aggravating factors (CCP; prior violent felony convictions; committed during the course of a kidnapping; committed to prevent a lawful arrest; and committed for pecuniary gain) and minimal mitigation.

Hartley, 686 So. 2d at 1324. The Florida Supreme Court did not consider the heinous, atrocious, and cruel aggravating factor in its harmless error analysis. Instead, it relied on the five proper aggravating factors and weighed them against the minimal mitigation offered during the penalty phase. As such, the record refutes this portion of the claim.

To the extent Harley contends the Florida Supreme Court should have considered the jury's lack of unanimity in recommending the death sentence, neither federal or state law required a jury to unanimously recommend a death sentence at the time of its decision.[18] Further, the United States Supreme Court does not require "a particular formulaic indication by state courts before their review for harmless federal error will pass federal scrutiny," but only requires "a plain statement that the judgment survives on such an enquiry." Sochor v. Florida, 504 U.S. 527, 540 (1992). As the Court already determined, the Florida Supreme Court correctly conducted a Chapman analysis when it held that the remaining proper aggravating factors when considered against the minimal mitigation rendered the error harmless beyond a reasonable doubt.

---

[18] The Court discusses the retroactive application of Hurst v. State, 202 So. 3d 40 (Fla. 2016), and Ring to Hartley's case in Ground Eight.

Regarding the remaining matters Hartley contends the Florida Supreme Court did not consider in its harmless error analysis, the Court finds these are matters that, as Hartley recognizes, came to light after the conclusion of the trial and would not have been valid considerations for the Florida Supreme Court's harmless error analysis on direct appeal. The Florida Supreme Court was limited to the evidence presented at the penalty phase. Accordingly, counsel's ineffectiveness, which has not been established at any level of the state court proceedings, and counsel's failure to consult a mental health expert would not have been proper factors for the Florida Supreme Court to consider in its harmless error analysis. See Arizona v. Fulminante, 499 U.S. 279, 307-08 (1991) (noting that "trial error" is "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt").

Moreover, the record reflects that the State's case against Hartley during the penalty phase did not rely heavily on the heinous, atrocious, or cruel aggravator. The State gave equal emphasis to all six of the aggravating factors it presented. Indeed, the transcript of the State's closing penalty phase arguments spanned thirty-eight pages but reflects that the State's discussion of the heinous, atrocious, or cruel aggravator lasted only eight pages. Resp. Ex. M. Further, even without the heinous, atrocious, and cruel aggravator, the

State presented extensive evidence supporting the five remaining aggravating factors, including the judgments and sentences for a prior manslaughter of a fifteen-year-old girl and two armed robberies. Resp. Ex. K. Hartley presented minimal mitigation. Resp. Ex. L. In light of the substantial evidence of the five remaining aggravators, Hartley's minimal mitigation would not have outweighed the aggravators. Therefore, the Court finds that the Florida Supreme Court did not err when it conducted its harmless error analysis, and Hartley is not entitled to relief on the claim raised in Ground Six.

### G. Ground Seven

In Ground Seven, Hartley asserts that his death sentence violates the Eighth and Fourteenth Amendments to the United States Constitution because the state court resentenced his equally culpable codefendant, Ronnie Ferrell, to life in prison. Amended Petition at 66-71. According to Hartley, the state court resentenced Ferrell in 2010; therefore, Ferrell's resentencing qualifies as newly discovered evidence that entitles Hartley to be resentenced to life in prison so that his sentence would not be disproportionate to Ferrell's sentence. Amended Memorandum at 80-82. Respondents did not respond to this claim. See Supplemental Response.

Hartley raised a similar claim in a second successive Rule 3.851 motion. Hartley v. State, 175 So. 3d 757, 758 (Fla. 2015). The postconviction court

denied relief. Id. In affirming the denial of relief, the Florida Supreme Court

reasoned:

> We also reject Hartley's argument and affirm the postconviction court's denial of relief, as Hartley has not shown that Ferrell's life sentence would probably result in a life sentence for Hartley on retrial. Hartley was more culpable as both the triggerman and dominant actor in the crime. See, e.g., Stein v. State, 995 So. 2d 329, 341-42 (Fla. 2008); Blake v. State, 972 So. 2d 839, 849-50 (Fla. 2007); Ventura, 794 So .2d at 571.[19] Hartley is therefore not entitled to relief.
>
> Hartley argues that he is entitled to a reduced sentence because the trial court and this Court already found Hartley and Ferrell to be equally culpable, and equally culpable codefendants must be treated alike. Hartley is correct that at Ferrell's first sentencing hearing, Judge Oliff—the original sentencing judge in both Ferrell's and Hartley's cases—found Ferrell to be equally culpable to Hartley. However, Ferrell's original sentence was vacated as a result of his successful postconviction motion, and he received a new penalty phase. Ferrell II, 29 So. 3d at 964–65, 984–88.[20] As such, the trial court's prior findings no longer stand, especially given that a trial court is not obligated to make the same findings on resentencing as at the original sentencing. Phillips v. State, 705 So. 2d 1320, 1322 (Fla. 1997) ("Phillips' resentencing proceeding was a 'completely new proceeding,' and the trial court was therefore under no obligation to make the same findings as those made in Phillips' prior sentencing proceeding." (quoting King v. Dugger, 555 So. 2d 355, 358–59 (Fla. 1990))).
>
> Additionally, Hartley misconstrues our findings in Ferrell's direct appeal case. Specifically, Hartley

---

[19] Ventura v. State, 794 So. 2d 553 (Fla. 2001).
[20] Ferrell v. State, 29 So. 3d 959 (Fla. 2010).

quotes from our opinion that "[a]lthough not considered in aggravation, the trial judge noted that Ferrell was just as culpable as the shooter because he used his friendship with the victim to lure the victim to his death." Ferrell I, 686 So. 2d at 1327.[21] Hartley also cites the following passage:

> [T]he sentence of death in this case is appropriate even though Ferrell was not the shooter and even though Johnson received a sentence of life-imprisonment. First, Ferrell played an integral part in planning and carrying out the murder. Moreover, Ferrell used his friendship with the victim to lure him to his death. Johnson merely provided the getaway vehicle after the crime was committed. We have previously determined that death is the appropriate sentence under similar circumstances.

Id. at 1331. However, these passages do not constitute a finding that the trial court's finding of equal culpability is supported by competent, substantial evidence. Rather, the first quote simply describes the trial court's findings, and the second quote discusses proportionality, with no mention of Hartley or his culpability as compared to Ferrell's. Hartley's arguments misconstrue our prior opinion and rely on trial court findings that were vacated on postconviction.

We find that Hartley is not entitled to relief because as the triggerman and dominant actor, he was the more culpable codefendant. We hereby affirm the postconviction court's denial of Hartley's second successive postconviction motion.

---

[21] Ferrell v. State, 686 So. 2d 1324 (Fla. 1996).

Id. at 760-61.

As there is a qualifying state court decision, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state supreme court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Hartley is not entitled to relief on the basis of this claim.

Even if the state supreme court's adjudication of the claim is not entitled to deference, the Court finds Hartley's claim is not cognizable on federal habeas review. The United States Supreme Court has held that the Eighth Amendment does not require a state appellate court to conduct a proportionality review of a death sentence by comparing it with penalties imposed in similar cases. Pulley v. Harris, 465 U.S. 37, 43-44 (1984); see also Mills v. Singletary, 161 F.3d 1273, 1281-82 (11th Cir. 1998) (noting that the Eleventh Circuit has instructed district courts to refuse requests to conduct a proportionality review of this type); Lindsey v. Smith, 820 F.2d 1137, 1154 (11th Cir. 1987) ("The Constitution does not require a proportionality review."). As such, the proportionality review conducted by the Florida Supreme Court

is a matter of state law. See Tillman v. State, 591 So. 2d 167, 169 (Fla. 1991). And, "[a] federal court may not issue the writ on the basis of a perceived error of state law." Pulley, 465 U.S. at 41; see also Bush v. Singletary, 99 F.3d 373, 375 (11th Cir. 1996) (holding that a proportionality review of a petitioner's death sentence after his codefendant's death sentence was vacated was not required by the United States Constitution and, thus, was not cognizable in a federal habeas petition for purposes of filing a successive petition). Because Hartley brings a claim of state law error in Ground Seven, his claim is not cognizable in a federal petition for writ of habeas corpus and is due to be denied.

## H. Ground Eight

Lastly, Hartley contends that his death sentence violates the Eighth and Fourteenth Amendments to the United States Constitution. Amended Petition at 72. According to Hartley, "the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment require the Florida Supreme Court's construction of Florida Statute section 921.141 in Hurst[22] to be applied in his case under Fiore v. White, 531 U.S. 225 (2001), and In re Winship, 397 U.S.

---

[22] 202 So. 3d at 57 (holding that before a trial judge may consider imposing a death sentence, "the jury in a capital case must unanimously and expressly find all the aggravating factors that were proven beyond a reasonable doubt, unanimously find that the aggravating factors are sufficient to impose death, unanimously find that the aggravating factors outweigh the mitigating circumstances, and unanimously recommend a sentence of death.").

358 (1970)." Amended Memorandum at 94. Hartley characterizes <u>Hurst</u> as a substantive, not a procedural, change of law. <u>Id.</u> 95-97. Therefore, Hartley maintains that "[t]he Due Process Clause requires the statutory construction announced in <u>Hurst v. State</u> to govern as to the homicide occurring in 1991 for which Mr. Hartley was convicted of first-degree murder." <u>Id.</u> at 97. Hartley argues that he has not been convicted of a capital first-degree murder because he never received a sentencing phase in accordance with <u>Hurst</u>. <u>Id.</u> at 97-98. He further argues that the Florida Supreme Court erred when it determined that <u>Hurst</u> does not apply retroactively to his case pursuant to the standard adopted in <u>Witt v. State</u>, 387 So. 2d 922 (Fla. 1980). <u>Id.</u> at 98-105. According to Hartley, the Florida Supreme Court should have applied the retroactivity analysis in <u>Fiore</u> and <u>Bunkley v. Florida</u>, 538 U.S. 835 (2003). <u>Id.</u>

Respondents asserts that this claim is untimely pursuant to <u>Mayle v. Felix</u>, 545 U.S. 644 (2005), because Hartley neither raised a Sixth Amendment jury trial claim, nor raised a <u>Ring</u> claim in his initial Petition. Supplemental Response at 4-10. According to Respondents, the claim in Ground Eight does not relate back to any of Hartley's original claims, and thus, is untimely as it was filed after the statute of limitations expired. <u>Id.</u> at 5-8. In his Supplemental Reply, Hartley argues that <u>Mayle</u> is inapplicable because "the basis for Mr. Hartley's claim did not exist at the time he filed his petition," as the Florida Supreme Court did not decide <u>Hurst</u> until seven years after he filed his initial

Petition. Supplemental Reply at 3-4. As such, Hartley contends that his claim

is timely pursuant to § 2244(d)(1)(D) because he filed the claim within one year,

when accounting for statutory tolling, of discovering the factual predicate

underlying his claim. Id. at 4. Hartley relies on Zack v. Tucker, 704 F.3d 917

(11th Cir. 2013), to support his argument that the one-year limitations period

of § 2244(d) applies on a claim-by-claim basis. Id.

AEDPA amended § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an
> application for a writ of habeas corpus by a person in
> custody pursuant to the judgment of a State court.
> The limitation period shall run from the latest of—
>
>> (A) the date on which the judgment
>> became final by the conclusion of direct
>> review or the expiration of the time for
>> seeking such review;
>>
>> (B) the date on which the impediment to
>> filing an application created by State
>> action in violation of the Constitution or
>> laws of the United States is removed, if
>> the applicant was prevented from filing by
>> such State action;
>>
>> (C) the date on which the constitutional
>> right asserted was initially recognized by
>> the Supreme Court, if the right has been
>> newly recognized by the Supreme Court
>> and made retroactively applicable to cases
>> on collateral review; or
>>
>> (D) the date on which the factual predicate
>> of the claim or claims presented could

<u>have been discovered through the exercise
of due diligence.</u>

(2) The time during which a properly filed application
for State post-conviction or other collateral review
with respect to the pertinent judgment or claim is
pending shall not be counted toward any period of
limitation under this subsection.

28 U.S.C. § 2244(d) (emphasis added). In <u>Zack</u>, the Eleventh Circuit held "that

the statute of limitations in AEDPA applies on a claim-by-claim basis in a

multiple trigger date case." 704 F.3d at 926. Where § 2244(d)(1)(A) is the only

applicable trigger date for the statute of limitations, however, it applies to a

petition as a whole. <u>See</u> <u>Thompson v. Fla. Dep't of Corr.</u>, 606 F. App'x 495, 505-

06 (11th Cir. 2015) [23] (reversing district court's determination that Thompson's

petition was untimely and distinguishing case from <u>Zack</u> because Thompson's

case was a single trigger case involving a new judgment entered after a

resentencing); <u>see also</u> <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 416 n.6 (2005)

(noting that § 2244(d)(1) "provides one means of calculating the limitation with

regard to the 'application' as a whole, § 2244(d)(1)(A), but three others that

require claim-by-claim consideration."). Accordingly, as an initial matter, the

---

[23] The Court does not rely on unpublished opinions as binding precedent;
however, they may be cited in this Order when the Court finds them persuasive on a
particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022);
<u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not
considered binding precedent, but they may be cited as persuasive authority.").

Court must determine if the instant case is a multiple trigger date case or single trigger date case.

Hartley maintains this is a multiple trigger date case because he could not have raised the <u>Hurst</u> claim in his initial Petition as the Florida Supreme Court had not decided <u>Hurst</u> at that time. Thus, he contends that § 2244(d)(1)(D) applies to Ground Eight, and the <u>Hurst</u> decision constitutes a new "factual predicate."

In <u>Johnson v. United States</u>, 544 U.S. 295, 305-310 (2005), the United States Supreme Court held that an intervening legal decision may be a "factual predicate" under § 2255's limitations period,[24] if the legal decision arose in the petitioner's own case, such as where the petitioner obtained a reversal of a state conviction which had resulted in his federal conviction as an armed career criminal. The Supreme Court noted that a defendant's prior convictions

---

[24] § 2255(f)(4) and § 2244(d)(1)(D) contain similar language. § 2255(f) provides:

> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final; [or]
> . . . .
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

constitute a factual predicate because they are subject to proof or disproof like other factual issues. Id. at 307. However, cases interpreting Johnson in relation to § 2244(d)(1)(D) have not extended its holding to state court decisions unrelated to the petitioner's own case that have changed substantive law. See Frederick v. McNeil, 300 F. App'x 731, 733 (11th Cir. 2008) (characterizing § 2244(d)(1)(D) as "the triggering provision that depends on presenting newly discovered evidence") (emphasis added); Lo v. Endicott, 506 F.3d 572, 575-76 (7th Cir. 2007) (holding that for purposes of § 2244(d)(1)(D) unless a state court decision occurred within a petitioner's own litigation history, a decision arguably helpful to a petitioner's claim "does not make the decision a fact subject to proof or disproof" and thus does not constitute a factual predicate within the meaning of § 2244(d)(1)(D)); Ikeaka v. Sec'y, Dep't of Corr., No. 2:14-cv-513-FtM-29-MRM, 2015 WL 4887640, at *3 (M.D. Fla., August 17, 2015)[25] ("'newly-discovered law' cannot restart the limitations period for a § 2254 petition; only new facts may do so."). As the Florida Supreme Court's decision in Hurst did not arise from Hartley's litigation in state court, the Court finds that Hurst does not constitute a "factual predicate" such that § 2244(d)(1)(D)

---

[25] The Court notes that although decisions of other district courts are not binding, they too may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

applies to Hartley's claim. Accordingly, the instant case is not a multiple trigger date case, and § 2244(d)(1)(A) is the only applicable trigger date for the statute of limitations. See Thompson, 606 F. App'x at 505-06. Thus, in order for the claim in Ground Eight to be timely it must relate back to Hartley's original pleading.

"An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). An amendment to a habeas petition may relate back "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts." Mayle, 545 U.S. at 664. A new claim, however, does not meet that standard and, thus, "does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Id. at 650. Notably, the terms "conduct, transaction, or occurrence" are not synonymous with "trial, conviction or sentence." Id. at 664.

Upon review of the record, the Court concludes that the instant claim does not relate back to the filing of Hartley's initial Petition because it asserts a new ground for relief supported by facts that differ in both time and type

from the claims raised in Grounds One through Six.[26] Hartley's original claims neither discussed <u>Hurst</u> resentencing, nor challenged Florida's death penalty sentencing scheme. <u>See generally</u> Petition. Likewise, Hartley did not raise a <u>Ring</u> claim in his initial Petition. <u>Id.</u> Therefore, the claim in Ground Eight is due to be dismissed as untimely.

Even assuming Hartley brought a timely <u>Hurst</u> claim, he is not entitled to relief. Hartley raised a similar claim in a successive motion for postconviction relief pursuant to Rule 3.851, which the postconviction court denied. <u>Hartley v. State</u>, 237 So. 3d 908, 909 (Fla. 2018). In affirming the postconviction court's denial of this claim, the Florida Supreme Court explained:

> Hartley's motion sought relief pursuant to the United States Supreme Court's decision in <u>Hurst v. Florida</u>, —— U.S. ——, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016), and our decision on remand in <u>Hurst v. State</u> (<u>Hurst</u>), 202 So. 3d 40 (Fla. 2016), <u>cert. denied</u>, —— U.S. ——, 137 S.Ct. 2161, 198 L.Ed.2d 246 (2017). This Court stayed Hartley's appeal pending the disposition of <u>Hitchcock v. State</u>, 226 So. 3d 216 (Fla. 2017), <u>cert. denied</u>, —— U.S. ——, 138 S.Ct. 513, 199 L.Ed.2d 396 (2017). After this Court decided <u>Hitchcock</u>, Hartley responded to this Court's order to show cause arguing why <u>Hitchcock</u> should not be dispositive in this case.
>
> After reviewing Hartley's response to the order to show cause, as well as the State's arguments in

---

[26] Hartley did not include Ground Seven in his initial Petition. <u>See generally</u> Petition.

> reply, we conclude that Hartley is not entitled to relief.
> Hartley was sentenced to death following a jury's
> recommendation for death by a vote of nine to three.
> Hartley v. State, 686 So. 2d 1316, 1319 (Fla. 1996).
> Hartley's sentence of death became final in 1997.
> Hartley v. Florida, 522 U.S. 825, 118 S.Ct. 86, 139
> L.Ed.2d 43 (1997). Thus, Hurst does not apply
> retroactively to Hartley's sentence of death. See
> Hitchcock, 226 So. 3d at 217. Accordingly, we affirm
> the denial of Hartley's motion.

Id.

To the extent that the Florida Supreme Court decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Hartley is not entitled to relief on the basis of this claim.

Even if the state supreme court's adjudication of the claim is not entitled to deference, the claim in Ground Eight is meritless. In Fiore, the United States Supreme Court ruled that Fiore's conviction and continued incarceration for operation of a hazardous waste facility without a permit violated his right to due process. Fiore, 531 U.S. at 228. The State of

Pennsylvania had successfully convicted Fiore of the charge because, although Fiore had a permit, he failed to substantially abide by the terms of the permit and violated the spirit of the statute. Id. at 227. While the state appellate court upheld Fiore's conviction, the Pennsylvania Supreme Court reviewed the case of Fiore's codefendant and interpreted the statute in such a manner as to conclude that the codefendant did not violate the plain language of the statute because he had a permit. Id. The United States Supreme Court certified a question to the Pennsylvania Supreme Court concerning whether its decision in the case represented a change of law. Id. at 228. The Pennsylvania Supreme Court answered, stating its decision did not constitute a change of law, but merely clarified the plain language of the statute in effect at the time of Fiore's conviction. Id. The United States Supreme Court then held that "[b]ecause [the co-defendant's case] was not new law, [Fiore's] case presents no issue of retroactivity;" instead, "the question is simply whether Pennsylvania can, consistently with the Federal Due Process Clause, convict Fiore for conduct that its criminal statute, as properly interpreted, does not prohibit." Id.

Hartley also relies on Bunkley to support his claim. In 1986, the State of Florida charged Bunkley with first-degree burglary because he was armed with a "dangerous weapon," a 2 ½ to 3-inch pocketknife. Bunkley, 538 U.S. at 836. Bunkley was convicted and sentenced to life in prison. Id. at 837. Florida had excepted the "common pocketknife" from its weapons statute since 1901,

84

but it was not until 1997 that the Florida Supreme Court in  L.B. v. State, 700 So. 2d 370 (Fla. 1997), interpreted the meaning of the phrase "common pocketknife" to be a blade under four inches. Bunkley, 538 U.S. at 837. Following the L.B. decision, Bunkley moved for postconviction relief on the basis that his pocketknife did not constitute a weapon pursuant to the armed burglary statute. Id. at 838. The Florida Supreme Court rejected Bunkley's claim, holding the decision in L.B. did not apply retroactively to his case. Id.

Bunkley's case ultimately made its way to the United States Supreme Court, which noted that "[t]he proper question under Fiore is not whether the law has changed," but "[r]ather, Fiore requires that the Florida Supreme Court answer whether, in light of L.B., Bunkley's pocketknife of 2 ½ to 3 inches fit within § 790.001(13)'s 'common pocketknife' exception at the time his conviction became final." Id. at 840 (emphasis added). Ultimately, the United States Supreme Court could not determine from the Florida Supreme Court's opinion when the law regarding common pocketknives changed and remanded the matter for the Florida Supreme Court to consider whether Bunkley's pocketknife fit within the "common pocketknife" exception at the time his conviction became final. Id. at 842.

To rely on Fiore or Bunkley, Hartley must establish that the Florida Supreme Court's decision in Hurst applied to his penalty phase at the time his conviction became final. See Bunkley, 538 U.S. at 840. However, the Florida

Supreme Court has specifically concluded that "Hurst reflected a change in this state's decisional law . . . ." Foster v. State, 258 So. 3d 1248, 1251 (Fla. 2018).[27] Further, Hurst "penalty phase findings are not elements of the capital felony of first-degree murder;" instead," they are findings required of a jury: (1) before the court can impose the death penalty for first-degree murder, and (2) only after a conviction or adjudication of guilt for first-degree murder has occurred." Id. at 1252 (emphasis in original). Accordingly, a jury finds all the elements necessary to convict a defendant of the capital felony of first-degree murder during the guilt phase. Id. In summation, the Florida Supreme Court stated:

> [A] conviction for first-degree murder, a capital felony, solely consists of the jury having unanimously found the elements set forth in the substantive first-degree murder statute and the relevant jury instruction. The conviction for first-degree murder must occur before and independently of the penalty-phase findings required by Hurst and its related legislative enactments. The Florida Statutes clearly establish the elements of first-degree murder required for a conviction, and upon conviction, the required findings in order to sentence a defendant to the death penalty. There is no, as Foster asserts, greater offense of "capital first-degree murder." Foster's guilt-phase jury considered all of the elements necessary to convict him of first-degree murder, a capital felony. Thus, his due process argument fails.

---

[27] The Court notes that the Florida Supreme Court receded from Hurst "except to the extent that it held that a jury must unanimously find the existence of a statutory aggravating circumstance beyond a reasonable doubt." State v. Poole, 297 So. 3d 487, 491 (Fla. 2020).

Id. (emphasis in original); see also Wright v. State, 312 So. 3d 59, 60 (Fla. 2021) (affirming the holding in Foster that Hurst did not change the elements of first-degree murder or create another offense of capital first-degree murder). Accordingly, Hurst and the amended legislation regarding penalty phase proceedings in capital cases did not reinterpret or clarify the essential elements necessary to convict a defendant of first-degree murder at the time Hartley's conviction became final.

Moreover, the Florida Supreme Court has ruled that Hurst did not apply to Hartley's conviction because at the time Hartley's conviction became final the United States Supreme Court had not decided Ring. See Hartley, 237 So. 3d at 909. In Asay v. State, 210 So. 3d 1, 11 (Fla. 2016), the Florida Supreme Court held that Hurst did not apply retroactively to defendants whose death sentences became final before the United States Supreme Court issued its opinion in Ring. Therefore, there is no due process violation under Fiore or Bunkley because, under Florida law, Hurst does not apply to convictions, like Hartley's, that became final before 2002. See Asay, 210 So. 3d at 22.

To the extent Hartley relies on examples of the Florida Supreme Court applying the new penalty phase statute to defendants who committed crimes before Hartley committed the instant offense, such cases are factually distinguishable from Hartley's case and do not stand for the proposition that

the new penalty phase legislation applies to all cases as early as 1981. In both
Card v. Jones, 219 So. 3d 47 (Fla. 2017), and Johnson v. State, 205 So. 3d 1285
(Fla. 2016), the defendants' sentences became final after Ring, and therefore,
Hurst applied retroactively to their cases. See Card, 219 So. 3d at 48; Johnson,
205 So. 3d at 1288. Hartley's case became final before the Ring decision;
therefore, under Florida law, he was not eligible for Hurst relief. In light of the
above analysis, Hartley has failed to establish his entitlement to relief on the
claim raised in Ground Eight; therefore, this claim is due to be denied.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Hartley seeks issuance of a certificate of appealability, the
undersigned opines that a certificate of appealability is not warranted. The
Court should issue a certificate of appealability only if the petitioner makes "a
substantial showing of the denial of a constitutional right." 28 U.S.C. §
2253(c)(2). To make this substantial showing, Hartley "must demonstrate that
reasonable jurists would find the district court's assessment of the
constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274,
282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the
issues presented were 'adequate to deserve encouragement to proceed
further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot
v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Amended Petition (Doc. 52) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.     If Hartley appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 4th day of August, 2022.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:     Kenneth Hartley, #318987
       Counsel of Record