**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**KENNETH HARTLEY,**

      **Petitioner,**

**v.**                                **CAPITAL CASE NO. 3:08-cv-962**

**SECRETARY, FLA. DEPT. OF**
**CORRECTIONS, ET AL.,**

      **Respondents.**

_____/

## RESPONSE AND OBJECTION TO PETITIONER'S EMERGENCY MOTION TO PERMIT FEDERAL COUNSEL TO EXHAUST IN STATE COURT

The Secretary and Florida Attorney General (collectively State) object to Hartley's Motion to permit the Capital Habeas Unit (CHU) to exhaust in state court, where Hartley is represented by Capital Collateral Regional Counsel – Northern Region (CCRC-N). (See Doc.88.) As CHU recently conceded, and two Eleventh Circuit Judges explained, this Court cannot authorize CHU to appear in state court without making a finding that state-appointed counsel is inadequate. *Booker v. Sec'y, Fla. Dep't of Corr.*, 22 F.4th 954, 959 (11th Cir. 2022) (Lagoa and Newsom, JJ., concurring). CCRC-N is adequate state postconviction counsel. Therefore, this Court cannot permit CHU to appear in state court under 18 U.S.C. § 3599. In an abundance of caution, the State also addresses its standing to object under *Booker*.

## Relevant Procedural History

Hartley was convicted of first-degree murder and sentenced to death for killing

Gino Mayhew after robbing and kidnapping him. *Hartley v. State*, 686 So. 2d 1316, 1318-19 (Fla. 1996). This Court denied federal relief in 2022. (Doc.72) Hartley's appeal of that decision is currently pending. (Doc.87.) On 2/29/2024, Hartley filed an "emergency" motion to exhaust claims of actual innocence and due process violations, and the State notified this Court it would respond. (Docs.88-89.)

## Relevant State-Court Facts

CCRC-N was created to provide capital defendants with more than adequate state postconviction counsel. §§ 27.7001, 27.7002, 27.701, 27.702, 27.704, 27.7045, 27.707, Fla. Stat. Since 2014, there have been enhanced standards governing representation for capital postconviction litigants. *See* Fla. R. Crim. P. 3.112(k). Florida courts are statutorily required to monitor the performance of counsel to ensure capital defendants receive "quality representation." § 27.711, Fla. Stat. CCRC-N has represented Hartley since 2/24/2020 (after then-registry counsel Linda McDermott withdrew) and is litigating a successive postconviction motion with an evidentiary hearing scheduled for 5/9/2024. (Docs.90-1, 90-2, 90-3.) Two CCRC-N attorneys, Elizabeth Spiaggi[1] and Nida Imtiaz, serve as his state-court counsel.

## Argument

Hartley requests this Court permit CHU to appear in state court where he is already represented by a state-created agency solely designed to litigate capital postconviction claims. This Response and Objection will proceed in three parts. Part

---

[1] Ms. Spiaggi has served as CCRC-N counsel in at least six capital postconviction appeals.

I will explain why CHU must seek authorization from this Court. Part II will explain why this Court would legally err by granting that authorization. And Part III will explain why the State either does not need, or has, standing to make this objection. At bottom, This Court should deny Hartley's request because it cannot find CCRC-N inadequate to litigate in state court.

## I.    CHU Must Obtain Authorization from this Court Before Exhausting.

CHU requires this Court's authorization before exhausting in state court. 18 U.S.C. § 3599(a)(2), (e) provide that appointed counsel "shall represent" a defendant at each "subsequent stage" of the proceedings after appointment unless replaced. But, since state postconviction "is not a stage 'subsequent' to federal habeas," *Harbison v. Bell*, 556 U.S. 180, 189-90 (2009), "a state prisoner is not entitled, as a matter of statutory right, to have federally paid counsel assist him in the pursuit and exhaustion of his state postconviction remedies," *Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1213 (11th Cir. 2014). Instead, a district court has discretion "on a case-by-case basis," to permit federal counsel to exhaust. *Harbison*, 556 U.S. at 189-90 & n.7. *See also Lugo*, 750 F.3d at 1214 (noting it is "an abuse of discretion" to appoint federal counsel to exhaust unless "the petitioner is unable to obtain adequate legal representation in state court").

## II.   § 3599 Does Not Authorize this Court to Appoint CHU to Appear in State Court Because Hartley has Adequate State-Court Counsel.

It would be legal error to permit CHU to exhaust in state court for two conjunctive reasons. First, § 3599 does not permit CHU to exhaust when a petitioner

3

has adequate state-court counsel. Second, CCRC-N is adequate state-court counsel.

### A. § 3599 Does not Permit CHU to Exhaust When State-Court Counsel Is Adequate.

Adequate state counsel precludes appointing CHU to exhaust under § 3599's plain language, accompanying Supreme Court caselaw, and Eleventh Circuit law. CHU even conceded that a district court cannot authorize § 3599 counsel to exhaust without finding state postconviction counsel is inadequate.

The plain language of § 3599(a)(2) limits the statute's application to situations where the petitioner "is or becomes financially unable to obtain *adequate* representation." (Emphasis added.) This includes the district court's discretionary authority to appoint federal counsel to represent a defendant in "other appropriate motions and procedures." § 3599(a)(2), (e).

The Supreme Court confirmed adequate representation precludes expansion of federal counsel's representation into state court. In *Harbison*, the Supreme Court held § 3599 authorized federal counsel to represent a defendant in state clemency proceedings where the defendant *requested* state counsel and *his request was denied*. *Harbison*, 556 U.S. at 182. The Supreme Court noted that § 3599(e) permits a district court to determine "on a case-by-case basis" whether to let federal counsel appear in state court and there was no general right for federal counsel to appear without that authorization. *Id.* at 190 n.7. But in reading § 3599, and limiting it, the Supreme Court observed: "[S]ubsection [3599](a)(2) provides for counsel only when a state petitioner is unable to obtain adequate representation . . . state-furnished

representation renders him ineligible for" § 3599 "counsel." *Id.* at 189.

Extensive dicta from the Eleventh Circuit confirms that this is the correct reading of § 3599. *Lugo*, 750 F.3d at 1214; *Gore v. Crews*, 720 F.3d 811, 814 n.1 (11th Cir. 2013) ("*If*" state-court counsel "*is not providing*" "*adequat*e" representation, a district court could appoint federal counsel to exhaust) (emphases added); *Gary v. Warden, Ga. Diagnostic Prison*, 686 F.3d 1261, 1273 n.27 (11th Cir. 2012) (noting "if the State provides counsel for any proceeding otherwise covered by section 3599, federal funding is not available," citing *Harbison*).[2]

More recently, in a two-judge concurrence, Eleventh Circuit Judges Lagoa and Newsom explained that a district court erred as a matter of law by appointing § 3599 counsel to appear in state court without making a finding about recently appointed counsel's adequacy. *Booker*, 22 F.4th at 959-62 (11th Cir. 2022) (Lagoa and Newsom, JJ., concurring). Then chief judge Carnes took the same view in a May 2019 letter chastising CHU's appearance in a warrant case without authorization and noting the district court would have abused its discretion if it authorized them to come into state court anyway because there was no indication state counsel was inadequate. (Doc.90-4.). Judge Walker recently came to the same conclusion in a warrant case—only permitting CHU to exhaust after finding a sole

---

[2] The Sixth Circuit has reached the same conclusion, while the Ninth has reached the opposite. *Compare Irick v. Bell*, 636 F.3d 289, 292 (6th Cir. 2011) *with Samayoa v. Davis*, 928 F.3d 1127, 1132–33 (9th Cir. 2019) (authorizing federal habeas counsel to appear in state court as additional clemency counsel despite state-appointed clemency counsel; dissent argued the decision could not "be squared with the Supreme Court's decision in *Harbison*").

practitioner (not CCRC-N) litigating an active warrant was inadequate. (Doc.90-5)

Perhaps most strikingly, CHU conceded at oral argument in *Booker* that district courts must determine state counsel's adequacy prior to permitting CHU to appear in state court. *See Oral Argument, Booker v. Sec'y, Fla. Dep't of Corr.*, 20-14539, at 28:15–28:45 (December 7, 2021.) (Ms. McDermott responding to Judge Lagoa's question about whether the district court was required to make an adequacy determination under § 3599 with: "I think the federal district court has to make a determination as to adequacy" under § 3599 before permitting CHU to exhaust).

The law is therefore entirely clear and beyond dispute. This Court cannot grant CHU's present motion without finding CCRC-N inadequate. That is doubly true since CCRC-N has represented Hartley since 2020 and is ably litigating a postconviction motion related to his case now. *Cf. Booker*, 22 F.4th at 957 (noting Florida appointed new postconviction counsel *after* CHU filed the motion to appear in state court and the State objected). As demonstrated in the next point, it would be legal error to hold CCRC-N, a state agency solely created to represent capital defendants in state postconviction proceedings, is inadequate to litigate in state court.

**B. CCRC-N Is Adequate State-Court Counsel Under § 3599.**

Pursuant to its comprehensive postconviction system, Florida has given Hartley state-appointed postconviction counsel, an agency created solely to litigate capital postconviction claims in state court. There is no basis for an inadequacy finding and this Court must therefore deny Hartley's motion.

As Judges Lagoa and Newsom pointed out, § 3599 does not define adequate counsel. *Booker*, 22 F.4th at 961 (Lagoa and Newsom, JJ., concurring). Adequate simply means "legally sufficient." ADEQUATE, Black's Law Dictionary (11th ed. 2019). Other definitions include: "sufficient for a specific need or requirement," and "(1) '[f]ully satisfying what is required; quite sufficient, suitable, or acceptable in quality or quantity'; or (2) '[s]atisfactory, but worthy of no stronger praise or recommendation; barely reaching an acceptable standard; just good enough.'" *Booker*, 22 F.4th at 961 (Lagoa and Newsom, JJ., concurring).

The Eleventh Circuit and Supreme Court have used the term "adequate representation" to describe the more familiar, bare minimum requirements of the Sixth Amendment's right to counsel. *E.g.*, *Harrington v. Richter*, 562 U.S. 86, 106 (2011); *Young v. Zant*, 677 F.2d 792, 798 (11th Cir. 1982). Sixth Amendment adequacy is not a high standard and simply requires competent counsel. *See Brewster v. Hetzel*, 913 F.3d 1042, 1056 (11th Cir. 2019); *Atkins v. Singletary*, 965 F.2d 952, 958 (11th Cir. 1992). Courts presume appointed counsel is adequate absent affirmative, persuasive evidence to the contrary. *Brewster*, 913 F.3d at 1056.

When determining § 3599 adequacy, this Court should afford state-appointed counsel the presumption of adequacy that arises in the Sixth-Amendment context. Absent affirmative, persuasive evidence, no federal court should hold state-appointed postconviction counsel is inadequate to represent a capital defendant in state court. It makes little sense for the presumption of adequacy to apply in matters of

constitutional dimension and not apply to a statutory right.

It is exceedingly difficult, but not impossible, to hold counsel inadequate without examining their actual performance. *See United States v. Cronic*, 466 U.S. 648, 662 (1984) ("[O]nly when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance."). "*Cronic* itself did not find defense counsel" presumptively inadequate for Sixth Amendment purposes "even though counsel was a real estate attorney appointed to defend a complex mail fraud case with only twenty-five days to prepare a defense." *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1251 (11th Cir. 2011). In so holding, the Supreme Court in *Cronic* reversed a ruling "that ranked as prejudicially *inadequate*" the services of an "inexperienced, underprepared attorney in a complex mail fraud trial." *Florida v. Nixon*, 543 U.S. 175 (2004) (emphasis added). *Cronic* thus provides the correct framework for determining whether Hartley's present state postconviction counsel is inadequate under § 3599.

CCRC-N is adequate state postconviction counsel for Hartley. The plain language of § 3599 considers one attorney to be adequate representation in death cases and imposes a good cause requirement to appoint a second attorney. *See* 18 U.S.C.§ 3599(a)(1)[3] (providing federal capital defendants with "*one* or more

---

[3] Section 18 U.S.C. 3599(a)(1) applies to federal capital defendants. *See Harbison v. Bell*, 556 U.S. 180, 184–85 (2009) (noting the parties' agreement that subsection (a)(1) applies to federal capital defendants and subsection (a)(2) applies to state prisoners seeking habeas relief); *Gary v. Warden, Georgia Diagnostic Prison*, 686 F.3d 1261, 1263 n.1 (11th Cir. 2012) ("18 U.S.C. § 3599 addresses both persons under indictment and awaiting trial in federal court and state prisoners under a sentence of

attorneys" in capital and capital postconviction litigation) (emphasis added); 18 U.S.C. § 3599(a)(2) (providing state capital prisoners seeking habeas relief with "*one or more attorneys*" in federal court) (emphasis added); 18 U.S.C.§ 3599(d) (The "court, for good cause, *may* appoint another attorney") (emphasis added); *Bible v. Schriro*, 651 F.3d 1060, 1066 (9th Cir. 2011) (stating section 3599(d) provides "that appointment of co-counsel is permitted 'for good cause.'"); *United States v. Brown*, No. 403CR001, 2007 WL 1812632, at *1 (S.D. Ga. June 18, 2007) ("18 U.S.C. § 3599 requires the appointment of only one counsel except upon good cause.") (quoting *McClure v. Maynard,* 2006 WL 1207907 at * 1 (D.S.C.5/2/06) (unpublished).) Solo attorneys may even adequately represent a capital defendant during an active warrant. *See Bible*, 651 F.3d at 1061.

CCRC-N is not a single attorney litigating an active warrant. Hartley has two CCRC-N counsel assigned to him. (See Doc.90-2:50-51.) CCRC-N is also a state-funded organization created to litigate claims for death-sentenced defendants, endowed with high standards for its attorneys, investigative staff, and subject to court monitoring to ensure above-adequate representation. *See* § 27.7001, 27.701, 27.702, 27.704(1), 27.7045, 27.705, 27.706, 27.707, 27.711(12). CCRC-N has been Hartley's counsel since 2020 and is currently litigating an expansive postconviction motion addressing the alleged recantations of two witnesses and due process violations

---

death who petition a United States District Court pursuant to 28 U.S.C. § 2254 for writ of habeas corpus.").

stemming from alleged suppression of evidence and suborning perjury at trial.

§ 3599 precludes holding CCRC-N is inadequate counsel because it is more than the solo attorney Congress envisioned as adequate. Congress explicitly provided capital defendants (in federal trials and execution-related litigation) with entitlement to *one* attorney. *See* 18 U.S.C. § 3599(a)(1), (a)(2). Holding CCRC-N inadequate would thus violate § 3599's plain text. The analysis should end there.

But even going further into Hartley's allegations, he cannot demonstrate inadequacy. He does not challenge the qualifications of his state-appointed, CCRC-N counsel, and simply asserts his CHU counsel are more familiar with Hartley's case, more familiar with the evidence undergirding the claims he now wants to exhaust, and that exhaustion would further the purpose CHU was created for.

None of that has anything to do with CCRC-N's adequacy to litigate Hartley's claims in state court. The fact that CHU counsel shortened CCRC-N's time get up to speed by cutting CCRC-N out of the investigation CHU conducted with the Fourth Judicial Circuit's Conviction Integrity Unit (CIU) does not make CCRC-N inadequate. CHU cannot be permitted to manufacture inadequacy by withholding useful evidence until the last minute then arguing only it can exhaust. That is an affront to Florida's postconviction system and yet another reason CHU should be required to stay in federal court instead of playing hide-the-ball with state counsel.

CCRC-N can become familiar with, and timely raise, Hartley's new claims. (See Docs.90-6 (CHU moving to exhaust in Melton's case), 90-7 (CHU moving to

withdraw that motion because CCRC-N filed the claims fourteen days after appointment), 90-8 (order granting withdrawal).) CCRC-N is familiar with Hartley's case and is currently litigating a state-court postconviction motion raising nine claims. CCRC-N thus has necessary familiarity with Hartley's case to litigate whatever new claims Hartley wants to raise.

*Cronic* illustrates why CCRC-N cannot possibly be deemed inadequate representation merely because CHU withheld useful evidence tied to witnesses in Hartley's case and is (apparently) only bringing this up now. After all, "*Cronic* itself did not find defense counsel" presumptively inadequate for Sixth Amendment purposes "even though counsel was a real estate attorney appointed to defend a complex mail fraud case with only twenty-five days to prepare a defense." *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1251 (11th Cir. 2011). CCRC-N is more adequate than the attorney in *Cronic* (who was deemed adequate).

Additionally, per the Fourth Judicial Circuit State Attorney's Office, CHU has overstated its interaction with CIU. CIU discussed aspects of its review of a petition Hartley's codefendant (Ronnie Ferrell) filed with the CIU in 2020, coordinated a few witness interviews, and agreed to limited forensic testing, but by no means conducted a "joint investigation" with CHU. Any alleged collaboration ended in August 2023 when CIU suspended review of Ferrell's petition. Similarly, CHU has overstated the nature and quality of the evidence it uncovered by referring to it as "large swaths" of exculpatory evidence. The evidence generally consists of expert witness testimony

(eyewitness identification and crime scene reconstruction), and detective notes.

To sum up, CCRC-N is (at least) adequate. Holding otherwise is an affront to Florida's legislatively established postconviction system that created CCRC-N and charged it with litigating capital postconviction claims. This Court is therefore bound by § 3599 to deny Hartley's request for CHU to appear in state court.

## III. The State Does not Need (or Has) Standing to Object Hartley's Motion.

The State does not need, or has, standing to make this objection for four reasons. First, Article III standing is not required when the State is the *defendant*. Second, *Booker* is factually distinguishable. Third, *Booker* is legally distinguishable. Fourth, a May 2022 Supreme Court standing decision has overruled *Booker*.

### A. Article III Standing Considerations Do not Apply When the State Is not Invoking a Federal Court's Jurisdiction.

Initially, the State need not demonstrate Article III standing to object here because Hartley (rather than the State) invoked this Court's jurisdiction. *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S.Ct. 2183, 2195 (2020) (rejecting a traceability argument as irrelevant because "petitioner is *the defendant* and did not invoke the" district court's "jurisdiction") (emphasis in original). Unlike in *Booker*, where the *State appealed* and invoked the Eleventh Circuit's jurisdiction, the State is presently the *respondent* in this Court. Article III considerations are simply inapposite in this circumstance. *Escalante v. Lidge*, 34 F.4th 486, 491 (5th Cir. 2022) ("It is [appellant], not [the appellee], who has invoked the authority of this court. Because the appellant

meets the elements of standing, it does not matter whether the other party does."); *Pers. Audio, LLC v. Elec. Frontier Found.*, 867 F.3d 1246, 1249–50 (Fed. Cir. 2017) (collecting cases on appellee standing and determining Article III considerations do not apply to an appellee); *Legault v. Zambarano*, 105 F.3d 24, 26 (1st Cir. 1997) (argument that appellee lacked standing in an appeal was a "meaningless quibble").

Booker says nothing about the State's ability to object when it is a respondent. And a litigant in federal court always has standing to argue about whether it has standing. *Cf. Brownback v. King*, 141 S.Ct. 740, 750 (2021) (recognizing the well-settled rule that a federal court always has jurisdiction to determine its own jurisdiction). There is no jurisdictional bar to this Court's consideration of the State's objection in this case. Any contrary argument is nothing more than a legally incorrect "meaningless quibble." *See Zambarano*, 105 F.3d at 26.

### B. *Booker* Is Factually Distinguishable Because CHU has not yet Appeared in State Court.

The Eleventh Circuit's traceability decision in *Booker* was peculiarly predicated on the State's failure to object in state court after CHU appeared there. *Booker v. Sec'y, Fla. Dep't of Corr.*, 22 F.4th 954, 958-59 (11th Cir. 2022)

Neither of these events has occurred. The State is not seeking relief from a past injury but to stop a future one from occurring. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (substantial risk of impending injury sufficient for Article III standing). And the State's failure to object in state court is simply irrelevant because CHU has not yet appeared in usurpation of CCRC-N's role. If this Court

grants CHU's motion, the State reasonably anticipates CHU will file the motion in state court and begin acting as lead counsel in violation of Florida's rules. While the State can (and will) object to CHU's appearance in state court if this Court grants CHU's motion, it has not had an opportunity to do so because these proceedings can prevent CHU from appearing at all. *Booker* is therefore inapposite.

### C. *Booker* Is Legally Distinguishable Because the State Will Suffer Reputational Harm if this Court Finds Current State-Appointed Counsel Inadequate.

*Booker* is legally irrelevant to this case because the State had not suffered reputational harm based on a district court finding of inadequacy. But (as noted above) this Court cannot grant CHU's motion without finding state-appointed counsel is inadequate. A finding of inadequacy is reputational harm to the State of Florida's postconviction system. The State has Article III standing to defend its system from a federal finding of inadequacy.

In *Booker*, the district court legally erred (and incurred the condemnation of two Eleventh Circuit judges) by failing to make a finding that state counsel was inadequate before granting CHU's motion to exhaust a claim in state court. *Booker*, 22 F.4th at 960 (Lagoa and Newsom, JJ., concurring) ("By failing to make a finding as to the adequacy (or lack thereof) of CCRC-N's representation of Booker for purposes of exhausting his *Brady* claim in state court, the district court erred by not applying the plain language of section 3599 in its appointment of CHU."). With the state of the law now perfectly clear, the State has no doubt that this Court will

perform the required analysis under *Booker* and CHU's oral-argument concession.

The finding this Court must make in this case to grant CHU's motion clearly distinguishes this case from *Booker*. The State has standing to argue that it has appointed adequate counsel to represent Hartley in state court because a contrary finding would harm the reputation of Florida's postconviction system.

The Supreme Court recently found that reputational harms are sufficient for Article III standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2209-2213 (2021). As applied to this case, *Ramirez* gives the State standing to defend against a finding that state-appointed counsel under Florida's system is inadequate. Any inadequacy finding this Court makes would be published to a third party (CHU and Hartley in this case) and also anyone with a WESTLAW or PACER account. A published, readily available order finding CCRC-N inadequate is not like writing "a defamatory letter and" storing it in a "desk drawer." *Cf. id.* at 2210.

A finding that CCRC-N—a state-funded agency created to litigate capital postconviction claims—is so inadequate that CHU must step in and help CCRC-N perform its duties (or do its duties for it) is defamation-like and sufficient to support Article III standing. This finding is a judicial determination that Florida has appointed inadequate counsel in a system that claims to provide much more than that. *See* Fla. R. Crim. P. 3.112(k) (listing the qualifications for capital postconviction counsel); § 27.711, Fla. Stat. (requiring state courts to monitor state-appointed counsel's performance to ensure Hartley receives "quality representation").

The fact that this Court has not yet made the finding is irrelevant to standing. *Driehaus*, 573 U.S. at 158 ("substantial risk" of "impending" injury sufficient for Article III standing). Before now, this Court only had CHU's motion. With no counter arguments, there was a substantial risk that this Court would find state counsel and/or Florida's system inadequate as a predicate to permitting CHU to appear. That is enough for Article III standing to defend against CHU's motion.

As a result of the finding this Court is legally required to make before permitting CHU to appear in state court, *Booker* is distinguishable. The State suffered no defamation-like injury in that case because the district court failed to follow the law and failed to do the required analysis. Since this Court will no doubt follow the plain language of § 3599, the Supreme Court, the Eleventh Circuit, and CHU's oral argument concession, and perform the required analysis, the State has standing to prevent reputational injury and argue that it has provided Hartley with adequate representation in state court. The State has standing to argue that this Court should not find Capital Collateral Regional Counsel North inadequate state counsel.

The State's impending reputational injury is not simply abstract. It has real world consequences for the State of Florida, including its ability to defend against arguments that it should not be permitted to opt-in in the future. *See generally* 28 U.S.C. Chapter 154. For example, in challenging Arizona's status as the only opt-in state in the country, Arizona's CHU argued before the Ninth Circuit that Arizona's postconviction counsel system was deficient and could not support Arizona opting

in. These facts and arguments include the following:

1. "The ABA Death Penalty Representation Project in 2005 identified 'Arizona as a state that particularly needed attention in part because of the horror stories [the Project] had consistently heard about ineffective lawyers being appointed in the state to handle all stages of capital proceedings, including post-conviction proceedings.'"

2. "Arizona's reality has been the regular appointment of unqualified capital postconviction attorneys—including lawyers disciplined by the state bar, criticized by state *and federal judges for their substandard performance*, and rejected for capital trial and appellate appointments."

3. "In practice, Arizona's mechanism has been woefully inadequate in providing a consistent system to appoint competent counsel to capital defendants in post-conviction proceedings for years."

4. "Any review of the attorneys actually appointed under Arizona's procedures underscores the procedures' failings, as evidenced by FDOAZ's comment that profiled attorneys who have received multiple appointments. Among them: *attorneys expressly found deficient or otherwise criticized by state and federal judges*."

5. "Empirical evidence showing how the system has actually functioned in practice is probative regarding that inquiry—not just regarding attorney competency, but also as to other elements of the certification analysis."

*Office of the Federal Public Defender for the district of Arizona et. al., v. William Barr, United*

*States Attorney General*, 9th Cir. No. 20-1144, Brief of Petitioner filed Aug. 13, 2020, at 17, 30, 54–56 (emphases added).[4]

The reputational harm the State seeks to prevent here—a finding from a federal judge that Florida's postconviction system has failed or appointed inadequate counsel—is therefore sufficient for standing. *See Ramirez*, 141 S.Ct. at 2209-2213; *Massachusetts v. E.P.A.*, 549 U.S. 497, 518-20 (2007); *Fed. Election Comm'n v. Cruz*, 142 S.Ct. 1638, 1646 (2022) (committee's inability to pay its debts was an injury because that inability "may inhibit" it from using loan-financing "in the future").

### D. *Booker* Was Overruled by Intervening Supreme Court Precedent.

The Supreme Court's recent standing jurisprudence casts significant doubt on *Booker*'s traceability analysis. *See Fed. Election Comm'n v. Cruz*, 142 S.Ct. 1638, 1646–1650. (2022). The State makes these arguments to preserve them for an appeal and argue: (1) the Eleventh Circuit should recede from *Booker* as wrongly decided and/or (2) the Supreme Court's decision in *Cruz*—issued four months after *Booker*—has overruled *Booker*. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

In *Booker*, the Eleventh Circuit held the State lacked standing to appeal a district court order permitting CHU to represent the defendant in exhaustion of a claim in state court. *See Booker v. Sec'y, Fla. Dep't of Corr.*, 22 F.4th 954, 958–59 (11th Cir. 2022). When analyzing whether the State had standing based on its claim that

---

[4] Available at: https://az.fd.org/fpd/capital-habeas-unit/stories/424-arizona-opts-expedited-habeas-proceedings.

"it has a stake in protecting Florida's postconviction system from interference by CHU counsel or federal district courts," the Eleventh Circuit held that any injury was not "traceable to the district court's order." *Id.* The Eleventh Circuit placed great weight on the fact that when the defendant's federal counsel "appeared in state court, the State failed to object" and "the state court allowed her appearance." *Id.* The Eleventh Circuit held that "because state courts are empowered to reject appearances by CHU counsel," any sovereignty injury was not traceable to the district court's order. *Id.* At bottom, the Eleventh Circuit held that since the State had another way to preclude federal counsel's appearance in state court—and did not employ it—any injury was not traceable to the district court's order. *Id.*

Four months later, the Supreme Court held that a litigant has Article III standing to challenge a statute even if his injuries are willfully self-inflicted and only indirectly caused by the statute. *See Cruz*, 142 S.Ct. at 1646-1650. As the Supreme Court has now made clear, and contrary to the Eleventh Circuit's holding, the State did not need to do *anything* in state court to perfect standing's traceability prong. The State could have willingly suffered an injury to its sovereignty and that would be sufficient to give it standing as long as it would not have suffered the injury but-for the district court's order. *See Duke Power Co. v. Carolina Env. Study Group., Inc.*, 438 U.S. 59 (1978). A plaintiff may take no steps to avoid injury, and indeed can willingly incur injury, and the injury still be traceable to a federal but-for cause. *See id.* at 74-75; *Cruz*, 142 S.Ct. at 1647-48. Therefore, the State's failure to object to

CHU's state-court appearance does not vitiate its standing.

Under *Cruz*, the State is also able to challenge the root cause of its injury. While *Booker* drew a distinction between an order appointing counsel to appear in state court and the actual appearance in state court, *see Booker*, 22 F.4th at 959, *Cruz* makes clear that this distinction is legally untenable for standing purposes. In *Booker*, CHU could not appear in state court but-for the order permitting them to appear. In *Cruz*, the regulations that actually injured the Committee and senator could not exist but-for the statute. Under *Cruz*, it does not matter the State could have taken steps to remove CHU from its courts, or that the district court's order did not compel CHU's state-court appearance. Under *Cruz*, the State had standing to challenge the district court's order, without which CHU could *never* have appeared in state court at all.

*Cruz* eviscerates *Booker*'s entire basis for holding the State lacked standing to assert sovereignty interests when it failed to object in state court to federal counsel's appearance. Contrary to *Booker*'s holding, the State could have *purposefully* suffered these injuries and been able to complain about them in federal court. *See Cruz*, 142 S.Ct. at 1647-48. *Cruz* also makes clear that a litigant has standing to challenge root causes of an injury even where the injury was merely dependent on the root causes' existence rather than caused by it directly. Under *Cruz*, the State had standing to challenge the district court's order, without which CHU could *never* have appeared in state court at all. Therefore, the Eleventh Circuit's traceability decision in *Booker* is no longer good law after the United States Supreme Court's decision in *Cruz*.

## CERTIFICATES OF COMPLIANCE AND SERVICE

I hereby certify this timely Response complies with the typeface (Calisto MT), font size, and page limitations in Local Rules 1.08(a), 3.01(b), and 3.01(c).  I also certify this response has been transmitted to all counsel of record on 3/4/2024.

ASHLEY MOODY
ATTORNEY GENERAL OF FLORIDA

 /s/ *Jason William Rodriguez*
JASON WILLIAM RODRIGUEZ
ASSISTANT ATTORNEY GENERAL
Florida Bar No. 125285
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
capapp@myfloridalegal.com
Jason.Rodriguez@myfloridalegal.com
Phone: (850) 414-3661

CO-COUNSEL FOR RESPONDENTS