# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

**KENNETH HARTLEY,**

    Petitioner,

v.                                    Case No. 3:08-cv-962-MMH-LLL

**SECRETARY, DEPARTMENT OF CORRECTIONS and FLORIDA ATTORNEY GENERAL,**     **THIS IS A CAPITAL CASE**

    Respondent.

_____

## RESPONSE PURSUANT TO COURT'S ORDER

On February 29, 2024, Mr. Hartley moved for permission to exhaust claims for relief in state court. ECF No. 88. Respondent objected, ECF No. 90, and this Court directed Petitioner to advise of (1) CCRC's position on the motion; and (2) why CCRC's representation is not adequate for pursuing the new state-court claims. ECF No. 92.

### I. CCRC's Position Regarding Expansion of CHU Appointment

On March 11, 2024, CCRC communicated their "official position" as:

1) CCRC-N *has no objection* to expand the scope of NDFL-CHU in its representation of Mr. Hartley and to appoint NDFL-CHU to represent Mr. Hartley for a limited purpose so it can pursue newly discovered evidence claims as it relates to the discovery of these claims during a joint investigation between the Conviction Integrity Unit ("CIU") of the SAO-4th Circuit and the NDFL-CHU. CCRC-N *does object* to NDFL-CHU's request for permission to assist in the presentation of evidence at the evidentiary hearing scheduled for May 9-10, 2024, on Mr. Hartley's amended fourth successive postconviction motion, filed August 4, 2023.

2) Based on the circumstances regarding the joint investigation of the CIU and NDFL-CHU and based on the scope and timeline to file the newly discovered

1

evidence claims, it is not plausible for CCRC-N to be in a position to adequately represent Mr. Hartley on the newly discovered evidence found by the joint investigation of the CIU and NDFL-CHU as CCRC-N was not included in that investigation.

CCRC Email (emphasis added). CCRC communicated no basis for its objection to CHU's assistance at Mr. Hartley's upcoming evidentiary hearing.

Conversely, when CHU initially conferred with CCRC about its position regarding CHU authorization to exhaust in state court in light of the new evidence CHU had uncovered—including during CHU's joint endeavors with CIU—CCRC represented: "[W]e don't take any position with regards to the request to go back. *We would defer to Mr. Hartley's wishes.*" 9/1/23 CCRC Email (emphasis added). Mr. Hartley has unambiguously expressed his desire that CHU represent him in exhausting relief in state court, including assisting at the state hearing to ensure a fully preserved record for federal review. Deference to Mr. Hartley's wishes supports CHU's involvement in the full capacity requested. *Compare* Attachment A (3/13/24 Statement of Kenneth Hartley) *with* ECF No. 88; *see also Lott v. Att'y Gen, State of Fla., et al.*, M.D. Fla., No. 6:06-cv-00778-ACC, ECF No. 44 (order noting that Petitioner's desire to have CHU's assistance to provide adequate representation is a compelling reason to permit CHU to exhaust).

## II. Adequacy of CCRC Representation for State Court Exhaustion

CCRC's represented it cannot adequately represent Mr. Hartley in litigation related to CIU/CHU's joint investigation. This admitted inadequacy should not be confined to discrete claims; it must apply to all claims related to new evidence.

### a. Federal litigation will be bound by the state-court record

In light of recent Supreme Court precedent which heavily restricts CHU counsel's ability to litigate claims and facts outside of the state-court record,[1] due process and interests of justice will be best served in Mr. Hartley's case by permitting federal counsel to have a say in what evidence is introduced in state court. Mr. Hartley's case involves actual innocence and CHU counsel is largely responsible for developing the claims to be brought in state court; is better suited to litigate those claims; and there is no indication that the claims flowing from CHU and CIU's joint investigation would have been developed and litigated absent CHU's involvement. *See Carter v. Sec'y, Fla. Dep't of Corr.*, M.D. Fla., No. 3:15-cv-01198-TJC, ECF No. 22 (permitting CHU to exhaust claims they have superior understanding of because they are in a better position to do so).

One of CHU's foundational purposes is to work with state-provided counsel—who often do not have expertise regarding the complexities of habeas law—to ensure preservation of death-sentenced individuals' access to federal merits review. *See Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1215-1221 (11th Cir. 2014) (Martin, J., concurring). Indeed, CCRC has frequently relied upon such assistance from CHU. *See, e.g.*, *Martin v. Sec'y, Fla. Dep't of Corrs.*, M.D. Fla., No. 3:16-cv-339-MMH-PDB, ECF No. 5 at 6 (CCRC seeking CHU appointment, in part because CCRC "is not experienced in arguing the complex federal issues arising

---

[1] *See Shinn v. Ramirez*, 596 U.S. 366, 376-384 (2022) (barring federal habeas courts from considering evidence outside the state-court record, even when default is due to state postconviction counsel's deficiencies); *Shoop v. Twyford*, 596 U.S. 811 (2022) (limiting federal counsel's ability to conduct certain investigatory steps when the results would not be admissible due to state-court default); *see also* § 2254(e)(1); *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

from AEDPA tolling"); *Brown v. Sec'y, Fla. Dep't of Corrs.*, N.D. Fla., No. 3:16-cv-99-RH, ECF No. 3 at 13 (same); *id.*, ECF Nos. 33, 34, 38, 42 (expanding CHU's role due to CCRC's ineffectiveness in litigating constitutional claims); *Bowles v. Sec'y, Fla. Dep't of Corrs.*, M.D. Fla., No. 3:08-cv-791-HLA-MCR, ECF No. 47 (permitting CHU state-court appearance alongside CCRC over State's objection due to demanding case posture and CHU's knowledge of the record; relevant litigation experience; and relationship with experts, witnesses, and client).[2]

Here, Mr. Hartley's new claims implicate important constitutional issues that will be cognizable in this Court if he does not obtain state-court relief. However, federal litigation of those issues will be constrained to the state-court record, including evidence presented at the upcoming hearing—which CCRC only obtained via CHU's investigation and subsequent claim development. CCRC has already admitted it cannot adequately represent Mr. Hartley's regarding certain claims due to its lack of involvement in the preceding investigation.[3] Further, CCRC lacks familiarity with significant aspects of Mr. Hartley's case, including relevant underlying court records.[4] Thus, CHU's participation in state-court

---

[2] Similarly to *Bowles*, Mr. Hartley's claims are complex, fact-intensive, derive from a massive record, and involve witnesses with whom CHU (but not CCRC) has cultivated relationships. Further, CHU's experience is paramount in this case, given that one of Mr. Hartley's two CCRC attorneys does not qualify as an assistant capital collateral counsel under 27.704 F.S. This leaves Mr. Hartley with only one statutorily qualified assistant capital collateral counsel to represent him at an extensive evidentiary hearing.

[3] As with CCRC's stated inadequacy to represent Mr. Hartley related to the CIU/CHU's investigation because it was not involved, CCRC was similarly uninvolved in the investigation and development of the claims underlying Mr. Hartley's upcoming evidentiary hearing. Thus, without CHU involvement, CCRC is similarly unable to adequately represent Mr. Hartley at the hearing.

[4] On February 5, 2024, four days before the scheduled 3.851(F)(5)(B) case management conference, the state court directed counsel to provide relevant records and transcripts for the

4

exhaustion is critical to ensuring a developed record that will allow federal litigation to occur unimpeded.

### b. The uncovered pieces of newly discovered evidence are inextricable

CHU counsel is not only better positioned to represent Mr. Hartley at his scheduled hearing; the legal standards and factual entanglement of Mr. Hartley's claims also call for consolidation of the litigation. For instance, many listed witnesses for the upcoming evidentiary hearing—including those testifying on behalf of both parties—were involved in the joint CHU/CIU investigation. As CCRC lacks familiarity with this aspect of Mr. Hartley's case, CHU's knowledge is critical to ensuring comprehensive direct and cross-examination of these witnesses.

As a more complex example of entanglement, Mr. Hartley's pending 3.851 motion includes *Brady/Giglio* and newly-discovered-evidence claims. The legal standards of these claims call for cumulative review. *See Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (materiality of suppressed evidence must be viewed "collectively, not item by item"); *Jones v. State*, 709 So. 2d 512, 517 (Fla. 1998) (using cumulative materiality as the standard for determining prejudice in newly-discovered-evidence claims). A holistic presentation of all of Mr. Hartley's claims to aid in cumulative review is especially necessary because evidence from each claim corroborates and enhances the others. For example, the core of Mr. Hartley's

---

proceedings. CCRC then informed CHU that it did not have the full set of any of the co-defendants' records on appeal. CHU subsequently provided the records to CCRC.

pending 3.851 motion involves trial witness Ronald Bronner's admission to giving false testimony. In corroboration, the forensic consultant recommended by CIU has concluded that the trial statements made by Bronner and other witnesses hold no forensic veracity.[5]

Additionally, barring CHU's involvement is not conducive to judicial economy. The claims arising from the joint CHU/CIU investigation are inextricably intertwined with the claims scheduled for evidentiary hearing. If CHU cannot assist at this hearing, Mr. Hartley's litigation will proceed on two separate tracks—one where CHU is involved and one where it is not. This could result in witnesses—including CHU investigators, current Florida inmates, and former ASA George Bateh—being required to testify at two separate hearings. Resources will be conserved by permitting CHU to exhaust all the claims it seeks to litigate, which will allow both tracks of litigation to converge.

### III. Additional Matters for This Court's Consideration

In addition to the above matters, this Court should reject Respondent's

---

[5] On March 7, 2024, the State Attorney's Office ("SAO") hosted a meeting with CHU and Assistant Attorney General ("AAG") Jason Rodriguez to discuss the concerning issues in Mr. Hartley's case. There, CHU presented the evidence uncovered from the investigation conducted with CIU, as well as the evidence pled in the pending 3.851 motion. Both the assistant state attorney and the AAG commended the thoroughness of CHU's presentation. Despite this, the Attorney General's Office subsequently filed a Motion to Exclude Ten of Deceased Ronald Bronner's Alleged Hearsay Statements as Substantive Evidence, and noted, "The State does not seek to exclude any other statements at this time, though it likely will seek to do so in the future." *State v. Hartley*, No. 1991-CF-8144 (Fla. 4th Cir. Ct.). AAG Rodriguez makes no mention of the State's ongoing consideration of the recently discovered evidence in that motion, nor in any other communication with the state court. This continuing adversarial position and lack of candid disclosure to the state court highlight the need for CHU to litigate and challenge any future misrepresentations.

objection to CHU's expanded appointment for two reasons: (a) Respondent lacks standing, which is a threshold jurisdictional issue; and (b) Respondent's objection rests on a misunderstanding of the applicable standard.

### a. Respondent lacks Article III standing

Respondent's standing arguments should be rejected for several reasons. First, as Respondent appears to concede, *Booker v. Sec'y, Fla. Dep't of Corrs.*, 22 F.4th 954 (11th Cir. 2022), remains good law. ECF 90 at 18. Second, Respondent misrepresents the import of Mr. Hartley's status as the party invoking this Court's action. Respondent's position as the opposing party in no way negates the standing requirement of a concrete, traceable injury. *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2195 (2020). Third, the State's unsupported speculation that CHU will "usurp[] CCRC-N's role" and "begin acting as lead counsel in violation of Florida's rules[,]" (ECF No. 90 at 13-14), is precisely the type of "conjectural or hypothetical" injury that cannot confer Article III standing. *See Booker*, 22 F.4th at 957 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Finally, Respondent claims that a finding permitting CHU to participate in state-court exhaustion would be "defamation-like" to "the reputation of Florida's postconviction system" and would thus harm "the State of Florida" as a whole. ECF No. 15-16. This is hyperbolic and self-serving.[6] Although Respondent and CCRC are both State-funded agencies, in practice they are substantive opponents. As a

---

[6] It is worth noting that the Florida postconviction system has already been heavily criticized. *See Lugo*, 750 F.3d at 1215-1221 (Martin, J., concurring)

7

matter of course, Respondent points out flaws in CCRC's work product and routinely benefits from court findings that CCRC has failed to properly present claims. *See, e.g., Damren v. State*, 2023 WL 5968167 at *1-2 (Fla. September 14, 2023) (affirming summary denial of CCRC's postconviction motion due to facial insufficiency of the underlying claim); *Brown v. Sec'y, Fla. Dep't of Corrs.*, N.D. Fla., No. 3:16-cv-99-RH, ECF No. 64 at 62-63 (Respondent relying on finding that CCRC "failed to properly raise the claim in her state postconviction motion resulting in the Florida Supreme Court finding the claim procedurally barred on appeal."). It is hypocritical for Respondent to now impute CCRC's reputation to its own. Such an 'about-face' borders on a conflict—after all, it would be in Respondent's best interest for Mr. Hartley's defense counsel to be inadequate in the upcoming state-court litigation. At a minimum, Respondent's assertion of reputational harm is "a mismatch between the effect of the order the State is challenging and the injury it claims to be asserting." *Booker*, 22 F.4th at 959. Respondent has no standing to object to CHU's expanded appointment.

### b. No adequacy finding is necessary to grant Mr. Hartley's motion

Respondent's contention that this Court must find CCRC inadequate before expanding CHU's appointment misapprehends § 3599. *See* ECF 90 at 4. The provision Respondent relies upon, § 3599(a)(2), states that federal counsel will be appointed "and the furnishing of other such services in accordance with subsections (b) through (f)," if an indigent defendant is unable to obtain adequate representation elsewhere. But § 3599(a)(2) governs only the *initial appointment*

8

of federal counsel—not the *scope* of representation after appointment, which is governed by § 3599(e). *See Harbison v. Bell*, 556 U.S. 180, 185 (2009). Once counsel is appointed under § 3599(a)(2), that representation may encompass the services described in §§ 3599(b)-(f) without the need for a district court to revisit adequacy questions. Thus, this Court need not find CCRC inadequate to permit CHU to exhaust relief in state court.

Given the Supreme Court's interpretation of § 3599(e)'s history and intent, this Court should apply the "interest of justice" standard in deciding whether to grant Mr. Hartley's motion. *See Martel v. Clair*, 565 U.S. 648, 658 (2012) (an "interest of justice" standard applies when a district court evaluates whether to substitute federal counsel under § 3599(e)); *see also Christeson v. Roper*, 574 U.S. 373 (2015). *Martel*'s discussion of the statute's terms and origin show that the same standard should apply here. *See* 565 U.S. at 658-60.

Congress enacted § 3599 to enhance the quality of representation for capital habeas petitioners "in light of . . . 'the seriousness of the possible penalty and … the unique and complex nature of the litigation.'" *Id.* at 659 (citing § 3599(d) (2006 ed.)) (discussing how, relative to § 3006A, § 3599 provides more funding for counsel, investigative, and expert services, and requires more experienced counsel). Section 3599's "measures 'reflect a determination that *quality* legal representation [must be available] in all capital proceedings to foster 'fundamental fairness in the imposition of the death penalty.'" *Id.* (quoting *McFarland v. Scott*, 512 U.S. 849, 855, 859 (1994)) (emphasis added).

An "interest of justice" standard is appropriate here because it "comports with the myriad ways that § 3599 seeks to promote effective representation for persons threatened with capital punishment," *id.*, and furthers the "fundamental fairness in the imposition of" Mr. Hartley's death sentence. *Id.* at 859.[7]

IV. **Conclusion**

CHU should be permitted to exhaust claims arising from the joint investigation with CIU because CCRC neither objects nor will be able to adequately represent Mr. Hartley. Further, the intertwined nature of Mr. Hartley's claims—and the fact that it was CHU's resources and investigation which permitted development of all of them—logically extend CCRC's admitted inadequacy regarding certain claims to *all* of Mr. Hartley's claims. And, Mr. Hartley has expressed his desire for CHU to assist in exhausting them. This Court should expand the scope of CHU's appointment and permit it to assist CCRC in exhausting all of Mr. Hartley's claims.

Respectfully submitted,

/s/ Linda McDermott
Linda McDermott
Office of the Federal Public Defender
Northern District of Florida
227 N. Bronough St., Suite 4200
Tallahassee, FL 32301-1300
(850) 942-8818
linda_mcdermott@fd.org

---

[7] Contrary to Respondent's assertion, the Sixth Amendment plays no part in this Court's determination. *See* ECF No. 90 at 7. "A statute need not draw the same lines as the Constitution," *Martel*, 565 U.S. at 661, and because "Congress declined to track the Sixth Amendment" in drafting § 3599, "the scope of that Amendment cannot answer the statutory question" of how to interpret § 3599(e). *Id.* at 662.

**CERTIFICATE OF SERVICE**

I hereby certify that true and correct copies of the foregoing motion have been furnished by electronic service to all counsel of record on this 13th day of March, 2024.

/s/ Linda McDermott  
Linda McDermott