IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**KENNETH HARTLEY,**

    Petitioner,

v.                                                Case No. 3:08-cv-962-MMH-LLL

**SECRETARY, DEPARTMENT OF**          **THIS IS A CAPITAL CASE**
**CORRECTIONS,**

    Respondent.

_____

**PETITIONER'S REPLY TO RESPONDENT'S 59(e) RESPONSE**

**I.  This Court should disregard Respondent's attempt to expand its order**

Respondent far exceeds the scope of Mr. Hartley's 59(e) motion by requesting that this Court "instruct CHU-N to stop providing any input or advice about Hartley's state postconviction proceedings that is not explicitly solicited by lead state postconviction counsel[,]" ECF No. 103 at 1, 8. Moreover, such a request is irreconcilable with CHU-N's foundational duties and ethical responsibilities.

CHU-N is bound by the American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (Revised Edition, February 2003) ("ABA Guidelines"). *See* Guide to Judiciary Policy, Guidelines for Administering CJA and Related Statutes, Vol. 7A, Chapter 2, Appx. 2A, Model Plan for the Implementation and Administration of the Criminal Justice Act, § XIV(B)(10) (constituting formal United States Judicial Conference policy

1

and requiring appointed federal capital counsel to comply with ABA Guidelines[1]); Judicial Conference Defender Services Committee's ("DSC") Mission, Goals, and Strategies, Goal 2, Strategies 23-24 (constituting formal DSC policy and requiring appointed federal capital counsel to comply with the ABA Guidelines).

> The ABA Guidelines require CHU-N to, among other duties:
>
> seek to litigate all issues, whether or not previously presented, that are arguably meritorious under the standards applicable to high quality capital defense representation…[and to] *make every professionally appropriate effort to present issues in a manner that will preserve them for subsequent review.*

Guideline 10.15.1(C) (emphasis added). Notably, this includes continued "aggressive investigation of all aspects of the case" and continually "review[ing] the desirability of modifying prior counsel's theory of the case in light of subsequent developments[.]" Guideline 10.15.1(E)(3-4).[2] Commentary regarding this Guideline makes clear that this investigation must cover "not only challenges to the conviction and sentence, but also *issues which may arise subsequently*."[3] Guideline 10.15.1 (Commentary) (emphasis added).[4] And, throughout, Guideline 10.15.1(E)(1) also requires CHU-N to "maintain close contact with the client

---

[1] Specifically, Guidelines 1.1 and 10.2, et seq.

[2] *See also* Guideline 10.15.1 (Commentary) (counsel "must conduct a thorough, independent investigation in accordance with Guideline 10.7" . . . because "continuing review [of] the desirability of amending the defense theory of the case" must occur *irrespective* of "whether one has been formulated by prior counsel in accordance with Guideline 10.10.1 or not.")

[3] For example, in Mr. Hartley's case, information that the Conviction Integrity Unit was investigating the reliability of the evidence against his co-defendant (which was essentially identical to the evidence against Mr. Hartley) was a subsequent development which could alter the best way to obtain relief on his behalf and required aggressive investigation.

[4] In evaluating defense counse, the United States Supreme Court has not only recognized the 'black-letter guidelines' as "well-defined norms" regarding the "standards for capital defense work," *Wiggins v. Smith*, 539 U.S. 510, 524 (2003)—the Court has also cited to the Commentary. *See Florida v. Nixon*, 543 U.S. 175, 191 (2004); *Rompilla v. Beard*, 545 U.S. 374, 387 & n.7 (2005).

2

regarding litigation developments[.]"

Importantly, the Commentary contemplates overlap between state and federal issues as it pertains to counsel's representation, describing the "mutual dependency among all the post-conviction legal procedures" and noting the "ever-more intertwined" relationship between state and federal collateral proceedings. Guideline 10.15.1 (Commentary). Thus, Respondent's sweeping concept of what constitutes CHU-N "stay[ing] in [its] respective lane[,]" ECF No. 103 at 7, contravenes CHU-N's affirmative duties set forth in U.S. Judicial Conference policy. To claim CHU-N must not "have input in Hartley's state proceedings[,]" *Id.* at 7, ignores the importance of state and federal counsel working in tandem when the state-court presentation will bind Mr. Hartley's ability to obtain relief in federal court. *See Shinn v. Ramirez*, 596 U.S. 366 (2022) (federal habeas court will not consider facts outside the state-court evidentiary record); *Shoop v. Twyford*, 596 U.S. 811 (2022) (ability to obtain federal investigative resources is limited by state-court evidentiary default).

In Mr. Hartley's case, CHU-N has followed proper procedure and acted collaboratively with CCRC-N: CHU-N moved for authorization to exhaust in state court, and when that authorization was denied, CHU-N assisted CCRC-N—at their request—in timely filing the state-court pleading. CHU-N is acting in accordance with U.S. Supreme Court caselaw, 18 U.S.C. § 3599(e), U.S. Judicial Conference policy, Defender Services Committee policy, and the ABA Guidelines.

## II. Respondent has misrepresented the meaning of *Lugo*

In service of its position, Respondent puts forth a misleadingly reductive representation of *Lugo v. Sec'y, Fla. Dep't of Corrs.*, 750 F.3d 1198 (11th Cir. 2014). Although the specific problem presented in *Lugo* was a pattern of untimely § 2254 petitions, the contemplation of a CHU in Florida cannot be limited to that discrete issue. And, although Respondent omits a significant portion of the sentence it quotes from *Lugo* ("Not only could it provide direct representation to capital inmates in some federal habeas proceedings, thus minimizing the need for court-appointed counsel…"), 750 F.3d at 1215, that Court's contemplation of CHU activities went far beyond date calculations and narrowly-tailored assistance to registry counsel. Such a narrow reading as Respondent presents would ignore the realities of federal habeas work, where a timely petition is meaningless if the federal claims and facts necessary to its resolution have themselves been defaulted. *See, e.g., Ramirez*, 596 U.S. 366 (state postconviction counsel's default of facts precluded their consideration in support of the federal petition's claims); *Mungin v. Sec'y, Fla. Dep't of Corrs.*, 89 F. 4th 1308, 1321 (11th Cir. 2024) (timing and presentation of successive postconviction claims impacts viability of federal review).

## III. Respondent's unsupported speculations and hyperbole should have no bearing on the resolution of Mr. Hartley's motion

Respondent's assertions that CHU-N has engaged in untimely

4

"[g]amesmanship";[5] "undercut[]" and "belatedly revised" its argument that it should be permitted to exhaust in state court alongside CCRC-N due to CCRC-N's unfamiliarity with the claims; and "back peddled" that position is wrong. ECF No. 103 at 9, 12. CHU-N's position is entirely consistent with its original representations: (1) CCRC-N was aware that CHU-N would be pursuing an investigation with the Conviction Integrity Unit in hopes of a favorable non-litigious resolution to Mr. Hartley's case;[6] (2) CCRC-N did not take action to avail itself of the information related to that effort; (3) when it became clear that litigation would likely be necessary, CHU-N reached out to CCRC-N well before requesting expansion of the scope of its appointment and before any state court pleading would need to be filed; (4) for months thereafter, while CHU-N attempted to resolve Mr. Hartley's case outside of litigation, CCRC-N still did not take action to become familiar with those issues; and (5) as a result, CCRC-N lacks familiarity with the claims.

The expanded detail CHU-N has provided is not gamesmanship. When this Court asked for specific additional details, CHU-N sought to balance the need to provide additional information with Mr. Hartley's need for confidentiality regarding the inner workings of his defense. ECF No. 93. That well-meaning but inadequate attempt unfortunately left this Court with an inaccurate impression of the dynamics of CHU-N's role and actions in Mr. Hartley's case. ECF No. 97 at 8,

---

[5] ECF No. 103 at 9; *see also id.* at 12 (characterizing CHU-N's efforts to ensure their innocent client may adequately litigate his state-court claims and preserve his federal claims as a "gambit").
[6] Respondent inexplicably ignores the affidavit of Karin Moore, who was lead state postconviction counsel for Mr. Hartley at the relevant time period.

5

fn.5. CHU-N's 59(e) motion has attempted to remedy that misperception.

But there is a more global problem with Respondent's position. CHU-N has already asserted that Respondent's self-insertion regarding matters of Mr. Hartley's counsel is without standing and borders on a conflict. This is illustrated by Respondent's unsupported speculation regarding facts related to CHU-N's motivations;[7] the context of CHU-N's communications with CCRC-N;[8] and the purported basis for CCRC-N's asserted conflict in state court.[9] Respondent not only has no specific knowledge of these facts, but *cannot* have any such knowledge, as it would be privileged information among Mr. Hartley's defense.

Respondent benefits by playing up any purported "drama between Hartley's state and federal counsel[.]" ECF No. 103 at 7. The more Respondent casts aspersions against CHU-N's attempts to protect their client's rights, the more it distracts and obfuscates from the actual issue: State misconduct is apparently responsible for the conviction and death sentence of an innocent man. Within the framework of U.S. Supreme Court caselaw, § 3599(e), U.S. Judicial Conference policy, Defender Services Committee policy, the ABA Guidelines, and the Rules of

---

[7] *See* ECF No. 103 at 12-14 (ascribing a motive of "usurpation" by proffering unrelated, one-sided, and out-of-context perceived grievances by state postconviction counsel—notably, not CCRC-N, whom CHU-N has previously worked with successfully for many years—against individuals who have not been employed at CHU-N for years). *See also id.* at 13-14, n.4 (mischaracterizing a matter that did not involve CHU-N at all, but rather CHU-M); *id.* at 20 (editorializing without support that what "CHU-N wanted all along" involved "get[ting] its client to take its side about state postconviction litigation and frustrate state counsel until state counsel withdraws.")
[8] *See* ECF No. 103 at 1, 8 (insinuating with no support that CHU-N's prior input and advice was not wanted or explicitly requested by CCRC-N).
[9] *See* ECF No. 14 (accusing CHU-N of "feign[ing] ignorance" of the basis of CCRC-N's conflict despite CHU-N's own representation that CCRC-N has not provided CHU-N with that information); *id.* at 15 (claiming without factual support that CHU-N "created" the basis for CCRC-N's asserted conflict of interest).

6

Professional Conduct, it is to Mr. Hartley's detriment to allow opposing counsel—who appears in both state and federal court—to further stack the odds by attacking Mr. Hartley's chance for effective and cohesive representation in both state and federal court and by attempting to have this Court limit Mr. Hartley's federal counsel's representation to the extent that counsel would violate her ethical duties to her client. If anyone is not staying in their respective lane, it is Respondent.

## IV. Conclusion

Mr. Hartley requests that this Court grant its motion to alter or amend by withdrawing footnote 5.

Respectfully submitted,

/s/ Linda McDermott
Linda McDermott
Chief, Capital Habeas Unit
Office of the Federal Public Defender
Northern District of Florida
227 N. Bronough St., Suite 4200
Tallahassee, FL 32301-1300
(850) 942-8818
linda_mcdermott@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing motion have been furnished by electronic service to all counsel of record on this 22nd day of May, 2024.

/s/ Linda McDermott
Linda McDermott